CALDWELL *v.* BARRETT.

Opinion delivered April 18, 1903.

LIMITATION—VOID OVERDUE TAX SALE.—An overdue tax sale based on a judgment rendered by a special judge at an adjourned term of the court held on a day when the regular judge was holding the regular term of court in another county in the same circuit is a nullity, and possession thereunder will not set in operation either the statute of limitation of two years, relating to tax sales (Sand. & H. Dig., § 4819), or that of five years relating to judicial sales (*Ib.* § 4818).

Appeal from Chicot Circuit Court.

ZACHARIAH T. WOOD, Judge.

Affirmed.

*Baldy Vinson* and *Norton & Prewett,* for appellants.

Judge Springer was a judge *de facto.* 63 Ark. 1; 48 Ark. 227; 49 Ark. 439; 38 Conn. 449; 3 S. E. 849; 8 Paige, 428; 4 t. Y. Ch. 490; 15 Pac. 778; 92 Cal. 31; 33 Pac. 732; 91 U. S. 594; 32 Atl. 484; 19 Ark. 46; 49 Ark. 439. One may always depend on the judgments of court fair on their face. Black, Interpretation of Statutes, § 153. No one can base a claim on the erroneous decision of a court. 47 Ark. 359; 43 Ark. 514; 47 Ark. 369; 7 Ark. 209. Judgments of *de facto* judge can not be attacked collaterally. 1 Black, Judg., § 266; 49 Ark. 397. The spirit of the law with reference to statute of limitations should be enforced. 58 Ark. 151.

*Chas. C. Waters,* for appellees.

There is no possession under a void tax deed. 57 Ark. 523. The finding of the court sitting as a jury is as binding as the finding of a jury. 45 Ark. 41; 56 Ark. 621; 60 Ark. 250. There is no foundation for color of title. 63 Ark. 1. The proceedings of the circuit court were void *in toto.* 34 Ark. 578; 55 Ark. 30.

*Cook & Kendall,* for appellee.

There are no rights under a void judgment. 63 Ark. 1; 48 Ark. 227; Freeman, Judg., § 117. Appellees were never disseized. 57 Ark. 527; 53 Ark. 404; 20 Ark. 516; 60 Ark. 163; 55 Ark. 168; 49 Ark. 266. Constructive possession forms the legal title. 60 Ark. 163.

*Baldy Vinson* and *Norton & Prewett,* for appellant in reply.

Where there is an office *de jure,* there is an officer *de facto.* 24 Pac. 367; 49 Ark. 439.

BUNN, C. J. The appellees, Barrett & Turner, brought this suit in ejectment against the defendants, A. S. Caldwell, Lott Morris and D. G. McRae, in the Chicot circuit court, March 17th, 1900, for the recovery of the west half of section 17 and the north fractional half of the north half of section 30, township 14 south, range 2 west, containing 1414.66 acres more or less.

These lands were originally granted to the state, September 29, 1850, as swamp lands, and were subsequently confirmed to the state, and by the state sold to Thomas J. Barrett and Oscar Turner, Sr., on the 13th of December, 1859. And subsequently, the patents being lost, duplicates thereof were issued on the 23rd day of October, 1896. Oscar Turner, Sr., sold his interest to his son, Oscar Turner, Jr., one of the plaintiffs herein, on 23d of October, 1895.

Theretofore the lands were forfeited for the non-payment of the taxes assessed against them, and the same were included in what is known as an overdue tax proceeding, under the act of 1881 and acts amendatory thereof, and were condemned to be sold by decretal orders in said proceedings, and were so sold, and at said sale D. H. Reynolds became the purchaser thereof, and in due course received his deed from the commissioner of the court in said proceedings, and he and those holding under him continued to pay the taxes thereafter. It appears from the rather indefinite evidence as to dates that Reynolds some time in 1889 or 1890 took possession of the lands under his said purchase, and erected thereon a steam saw mill for the purpose of sawing timber with which to repair and put in order the Macon Lake Plantation near by, and that he held possession in that way until some time in 1894 or 1895, when he moved the mill and put it up again on other lands five miles away.

It appears that Reynolds mortgaged the lands in controversy

in 1893, and some time in the year 1893 or 1894 mortgaged also the Macon Lake plantation to Hardie & Co. to secure the payment of a debt owing to them, and that these mortgages were foreclosed, and the appellant A. S. Caldwell became the purchaser of the lands in controversy, and received his deed. There does not appear from the evidence that the defendants' vendor actually occupied the lands in controversy otherwise than in the erection and use of the mill and tenement houses around it, and it appears that he moved the mill in 1894 to other lands five miles away, and exercised no other possessory control until plaintiffs took possession in 1895, and had held possession thus for two years or more, making some improvements thereon, when the defendants regained possession, and was thus in possession when this suit was instituted. The trial court found that the appellants never at any time held possession continuously for the period of seven years, and that the plea of adverse possession for that period was not sustained.

In addition to the plea of adverse possession for the statutory period, the defendants set up in their answer the plea of five years' ownership under judicial sale, that is, the overdue tax sale, and also of two years' possession as a tax purchaser—purchase under the overdue tax sale.

The plaintiffs contend that the overdue tax sale was void, and that therefore the limitations of five years and of two years can not avail.

The court below sustained the plaintiffs' contention on all these pleas of limitation. The controlling question is whether the overdue tax proceedings were valid or invalid; for, if valid, the plea of limitation of five years and also of two years on the part of the defendant is sustained, and the case is thereby settled. If not, the case is settled in favor of the plaintiffs, since the evidence does not show that the plea of seven years' adverse possession is sustained, as was hereinbefore stated.

It appears that at the July term, 1882, of the Chicot circuit court in chancery sitting, an adjourned term was ordered for the 25th of September, 1882; that when the 25th of September, 1882, had arrived, the regular judge was not present, but was at Warren, Bradley county, in the same circuit, holding his, the regular, term of the circuit court in that county, as fixed by law; that the regular practicing attorneys present at Lake Village, county seat of Chicot county, proceeded to and did elect a special judge to preside in

that court, and by the court thus organized the decree was rendered condemning the lands for non-payment of taxes, at which Reynolds became the purchaser of the lands in controversy, and in due course received his deed, upon the report of the commissioner being received and his sale confirmed.

In *Butler* v. *Williams,* 48 Ark. 227, a special term was ordered, and a special judge elected, under similar circumstances as in the case at bar. In that case the court said:

"The terms of the circuit court are prescribed by statute. It is provided, however, that special adjourned sessions of any court may be held in continuation of the regular term, upon its being so ordered by the court or judge in term time, and entered by the clerk on the record. There is no such thing known to our law as two circuit courts held in the same circuit at the same time, one presided over by the regular judge and the other by a special judge. Suitors are entitled to have their causes tried before the circuit judge, unless he is disqualified or unable to preside from causes beyond his control. It was lawful for the Desha circuit court to adjourn its sitting to a distant day. But when that day arrived, and he was detained by his judicial duties in another county of his circuit, the adjourned session necessarily failed. For there is no power to supply his place temporarily by a special judge elected by the attorneys in attendance; his absence for this cause not being such an inability to continue to hold the court as is contemplated by section 21 of article 7 of the constitution of 1874."

In that case this court gave more stress to the invalidity of the adjourned session at which the decretal orders were made than to the special judge who presided over the court.

The case of *Strett* v. *Reynolds,* 63 Ark. 1, was expressly decided on the ruling of this court in *Butler* v. *Williams,* 48 Ark. 227. But the defendant's counsel contend in argument that this last mentioned case is not applicable as an authority in *Streett* v. *Reynolds, supra,* for the reason that *Butler* v. *Williams* was a direct attack upon the status of the special judge trying the case, while his official character in *Street* v. *Reynolds,* was called in question only collaterally, which could not be done under the rule applicable to the case of the acts of judge *de facto,* which, they contend, was the status of the special judge in the latter case.

The real point at issue, then, is whether a special judge under the circumstances of the case at bar, of *Streett* v. *Reynolds* and

of *Butler* v. *Williams,* is a *de facto* judge. Now, in order to be a *de facto* judge, there must be a regularly constituted office and a vacancy therein before one appointed or elected to fill such office can de denominated a *de facto* officer. In all the cases decided by this court, where the proceedings and judgments have been held to be nullities, the defect has been in the office, and not merely the want of authority in the person appointed to fill such office, for, as contended by the defendant's counsel, it is true that when there is an office, and no *de jure* officer to exercise its functions, then one appointed under the form of law would be a *de facto* officer at least, and his acts are not to be called in question collaterally. The question is quite different where there is no *de jure* office, if it is proper so to speak, for the foundation of the proceeding must be, as in this case, a lawfully created court, or there is a total want of jurisdiction in the court itself to hear and determine the cause, and this jurisdictional infirmity will annul any proceedings therein on mere suggestion to the proper court. It would be beyond all precedent to term the judge presiding in a court which is not a court at all a *de facto* judge.

This settles the case in favor of the plaintiffs as to the main issues, for there was no sale, and therefore no title acquired, nor can the statute of limitations for five or two years be applied.

The question of how much the defendants are entitled to for taxes paid and improvements made is settled by the findings of the court below.

The decree is in all things affirmed.