BOARD OF IMPROVEMENT OF GRAVETTE WATERWORKS IM-
PROVEMENT DISTRICT *v.* CARMAN.

Opinion delivered April 7, 1919.

1. MUNICIPAL CORPORATIONS—IMPROVEMENT DISTRICTS—SUFFICIENCY
   OF DESCRIPTION.—Where petitions for the organization of an elec-
   tric light and a waterworks improvement district prayed that the
   whole of a named city be formed into such districts, and the or-
   dinances forming the districts recited that the whole city was in-
   cluded, and also gave the boundaries of the town by metes and
   bounds, the districts were not void merely because the descrip-
   tion by metes and bounds was insufficient.

2. SAME—IMPROVEMENT DISTRICTS—TITLE OF ORDINANCES.—Kirby's
   Digest, section 5684, prescribing the form of an ordinance assess-
   ing betterments of an improvement district and fixing the liens
   on lands benefited, does not require the title of the creating or-
   dinance to be in any particular form.

3. SAME—IMPROVEMENT DISTRICTS—TITLES OF ORDINANCES.—The title
   of a city ordinance organizing an improvement district *held* suf-
   ficient to comply with section 5481, Kirby's Digest, if it be con-
   ceded that this section applies to the ordinance.

4. SAME—IMPROVEMENT DISTRICTS—BURDEN OF PROOF.—In an action to recover assessments against property included within improvement districts, if the property owners contend that the districts were not established by petitions of a majority of the property owners, as formed by the city council, the burden is on them to prove such fact.

5. SAME—IMPROVEMENT DISTRICTS—INVALID ORGANIZATION—DE FACTO OFFICERS.—Where a legislative act attempting to raise an incorporated town to the rank of a second-class city is invalid, the acts of officers of the town attempting to act as a city were valid if within the powers of officers of an incorporated town.

Appeal from Benton Chancery Court; *Ben F. Mc-Mahan,* Chancellor; reversed.

*C. M. Rice* and *McGill & McGill,* for appellants.

1. The allegations of the original complaint made a *prima facie* case as to the validity of the ordinances establishing the districts and levying the assesments. There is no specific denial of the allegations of the cross-complaint that no petition was filed within three months after the publication of the ordinances. 68 Ark. 376; 84 *Id.* 257. All objections to the validity of the proceedings establishing the districts, or levying and collecting assessments, must be specifically stated. Mere denials are not sufficient, or general allegations of fraud, illegality or irregulartiy, present no issue, and do not impose upon the board the burden to show that all proceedings were regular. The burden of showing defects and irregularities is upon him who sets them up and relies upon them. 28 Cyc. 1188-9. This includes the constitutional objection that a majority of landowners did not sign the petition. 84 Ark. 257; 90 *Id.* 29. The only defects set up in the amended answer and cross-bill are that the proceedings are void because the organization of the city or town as a city of the second class was not signed by a majority in value and was not presented in time. The court sustained the first objection but made no finding as to the second, but it went further and found that the ordinance was void for fatal variance between the description of the district in the ordinance and the petition of the real

estate owners asking for the district and because the description in the ordinance is indefinite and uncertain and because the ordinance does not state the subject of the ordinance or its title. As no issue was made in the pleadings or developed in the evidence bearing on the description or the title, the court must have made its findings by an inspection of the ordinance, and all the findings were erroneous.

2. The description was sufficient and there was no variance. The whole town was included. 70 Ark. 451; 90 *Id.* 219; 113 *Id.* 193; 115 *Id.* 594. No metes and bounds were necessary, as the whole town was included. As to the title of the ordinances the record shows a complete title. Kirby's Dig., § 3684.

3. The initial petition and majority petition both had the requisite number of signers. No issue was made in the pleadings as to the validity of the initial petitions. The waterworks petition was signed by twelve persons and the electric light petition by ten persons, all residents and real estate owners. It was not necessary that they should be residents. Both petitions were duly signed and presented in time. The proceedings were all regular and the districts duly established and the levies made were valid, as if done by the town council of Gravette.

4. The act of March 23, 1915, cured all defects in the proceedings had and done under the special act of February 7, 1911, raising the town to a city of the second class. Acts 1915, 831. It declares them *de facto* governments. Const., art. 12, sec. 3. *Ib.* § 2. The classification was purely arbitrary. Kirby's Dig., § § 5421, 5422-4. After the decision in 117 Ark. 190, the Legislature passed the curative act of March 23, 1915, *supra,* which cured all defects in proceedings. 125 Ark. 126.

5. The acts and proceedings in relation to the districts were valid without the curative act, as they were performed by *de facto* officers. 123 Ark. 231; 38 Conn. 449; 9 Am. Rep. 409; 49 Ark. 439; 38 *Id.* 159; 118 U. S. 425; 122 Am. St. 331; 134 *Id.* 543; notes to Am. Rep., Trinity Series, pp. 683-694; 134 Mich. 537; 188 N. Y. 185;

117 Am. St. 841; 32 Conn. 432; 4 Am. Rep. 89; 24 Wend. 520; 81 Ark. 391.

6. It appears in evidence that since these suits all of the defendants have paid up their assesments in full. The signing of the referendum petition was not a legal step towards resisting the proceedings, as the referendum does not apply to such a case. 110 Ark. 528; 117 *Id.* 266. On the question of estoppel by signing petitions, acquiescence and failure to take legal steps, see 55 Ark. 148; 29 *Id.* 344; 69 *Id.* 68; 70 *Id.* 45; 71 *Id.* 556; 95 *Id.* 575; 90 *Id.* 29; 115 *Id.* 88; Ann. Cases 1915, B. 746 and note. In determining benefits the board may adopt a percentage valuation. 86 Ark. 1.

7. It was error to dismiss the complaints and enjoin the ordinances for any purposes and to cancel them. *Supra.*

*W. N. Ivie,* for appellees.

1. The appeals should be dismissed or the decrees affirmed because (1) there is no bill of exceptions in the record identifying and bringing upon the records, divers records read in evidence upon which the chancellor based his decrees. (2) The transcripts are not complete and do not contain all the evidence and documents introduced as required by law and the rules of this court. (3) The transcripts are defective and contain depositions and documentary evidence which are no part of the record and not used in the court below, and (4) said records and transcripts are not properly abstracted as required by the rules of this court. The stipulation of counsel as to records and documents was not complied with and numerous records and documents were placed in the records without identification by the court or being submitted to counsel for appellee, and could only be brought into the record by bill of exceptions. 86 Ark. 368; 112 S. W. 373; 92 Ark. 622; 124 S. W. 254. The case should be affirmed on the presumption that the chancellor's decree was warranted by the evidence. *Supra.*

2.   The decree is right on the merits.   The petitions were defective in the description of the real estate embraced in the districts and the extent and character of the improvements.   116 Ark. 167; 172 S. W. 864; 103 Ark. 269; 146 S. W. 505-6.   The boundaries must be designated and the council must conform strictly to the authority conferred upon it by the petition, the foundation of the improvements.   71 Ark. 566; 104 *Id.* 298.   The metes and bounds are uncertain and indefinite and there are alterations and additions to the records and many irregularities which avoid the districts.   In addition, the city was without authority to pass the ordinances at the time. The city of Gravette was raised to a city of the second class by a special act and said act was void.   117 Ark. 190.   It could not be validated or cured by any subsequent act.   Acts 1915, p. 831 (No. 212).   The case in 125 Ark. 126 does not aid counsel for appellant.   The council were elected under a *void* act and its members were not even *de facto* officers, nor the city a *de facto* government. 2 McQuillin Mun. Corp., § § 611, 706-7; Const. 1874, art. 19, § 27; 84 Ark. 380; 116 *Id.* 167; 123 Ark. 327.

SMITH, J.   Suits were brought by the electric light and waterworks improvement districts of the incorporated town of Gravette against appellees to collect unpaid and delinquent assessments due on the lands described in the complaints.   The complaints were drawn in conformity with sections 5691 and 5692 of Kirby's Digest, and contained only the allegations there required.   An answer and cross-complaint was filed in each case, in which the validity of the assessments sought to be enforced was challenged upon two grounds.   First, that no authority existed for the passage of the ordinance which raised the grade of the town to that of a city of the second class, the ordinances creating the improvement districts having been passed by the council while acting under its supposed authority as a city of the second class.   Second, that a majority of the property owners had not petitioned the formation of the districts.   By way of cross-com-

plaint it was prayed that the collection of the assessment sued for, as well as any others, be perpetually enjoined.

The court sustained the first objection, but made no finding on the second. The court, however, went farther and found and declared the ordinances establishing the improvement districts were void by reason of a fatal variance between the description of the districts in the ordinances establishing them and the description in the petition praying their establishment, because the description set out in the ordinances is indefinite and uncertain, and, because the ordinances are not entitled, and do not state the subject of the ordinances in the title. The finding is identical in each case, as the suits were tried together by consent on identical records and are briefed here as a single case, although separate appeals have been perfected. We dispose of the questions stated in the order in which they are discussed by counsel.

We think the districts were not invalid because of an insufficient description of the territory to be embraced. The prayer of the petition was "to lay off and establish the whole of the city of Gravettte into an electric light improvement district to be known as the Gravette Electric Light Improvement District." And a similar petition was filed for the waterworks district. The record of the city council recites that the council proceeded, pursuant to the petition of the property owners, "to take the necessary legal steps to lay off the whole of the city of Gravette, Benton County, Arkansas, into an improvement district, as the same is now established, towit," and then follows by metes and bounds the boundary of the town. Attention is called in appellees' brief to two patent errors in this description; but it is insisted by appellant that if any issue as to the sufficiency of the description of the districts had been raised by the pleadings the errors pointed out could have been explained. Indeed, the argument is made that if the description is considered in its entirety no error exists. Whether this be true or not, we think the court's finding that the district is void because of its imperfect description, can not

be sustained, for the reason that it is manifest from the recitals of the petition, and of the ordinance which sets it out, that the entire city was being established into an improvement district. The ordinance so expressly states, and, while an error may have been made in copying the boundary lines of the town, it is not contended that any uncertainty exists as to that boundary, and no contention is made that the entire town could not have been put into a single district. Section 5665, Kirby's Digest.

Upon the question of the title of the ordinance it may be said that section 5684 of Kirby's Digest prescribes the form of an ordinance assessing the betterments of the improvement against the lands embraced in the district and fixing the lien thereon, but makes no requirement in regard to the title of the ordinance. Indeed, it makes no reference to a title. The form there given contains a preamble, which sets forth recitals that would ordinarily be contained in the title. However, if section 5481 of Kirby's Digest does apply to the ordinance assessing the betterments the record of the council recites the introduction of an ordinance entitled, ''An ordinance establishing an improvement district in the city of Gravette, Benton County, Arkansas, to be known as the Gravette Waterworks Improvement District, for the purpose of acquiring, erecting, building, maintaining and operating a general system of waterworks in said improvement district,'' and if a title is required—which we do not decide—the one set out above suffices. The record of the electric light district is identical.

It is very earnestly insisted that neither the initial nor the majority petition contained the requisite number of signers, and in support of this contention it is asserted that ''it does not affirmatively appear that all the testimony offered at the trial is included in the transcript and that we must, therefore, indulge the presumption that omitted testimony would support a finding that the petitions did not contain the requisite number of signers.'' The court, however, made no such finding, the decree against the districts being based upon other grounds

as stated above. The clerk has certified that the transcript, to which his seal is attached, "contains a true and correct transcript of all the pleadings, records and evidence, both oral and documentary, introduced in the above entitled cause, * * *'' and there is nothing in the decree itself in conflict with this certificate. The decree recites that the cause "is submitted to the court upon the pleadings of the parties, and the exhibits thereto, the depositions of witnesses, the original record and minute book of the corporation of Gravette, Arkansas, and other documentary and record evidence adduced by consent of parties relative to the raising of said town to a city of the second class, and the creation and establishing of said improvement district and the enforcement thereof.'' Counsel for appellees say, however, "that there is nothing in the evidence or in this record to show that there was a majority in value of the real estate owners in either of the districts who had signed the petitions, and nothing to show what a majority in value was in either district.'' The court below made no finding on the question of majorities, and it may be true, as counsel contends, that such a finding can not be made from the record before us. But the districts are not to be defeated on that account. No burden rested upon the districts to show affirmatively that they had been established upon majority petitions. Under the statute the assessments of benefits could not have been levied as liens upon the lands within the districts until the precedent finding had been made by the town or city council that the improvements had been petitioned for by a majority of the property owners in the districts; and while this finding was not conclusive, it was *prima facie* correct, and imposed the burden of showing that the districts had not been petitioned for by a majority of the property owners upon him who attacked the districts on that ground. *Boles* v. *Kelley,* 90 Ark. 29; *Board* v. *Offenhauser,* 84 Ark. 257; *K. C. P. & G. Ry. Co.* v. *Waterworks Imp. Dist.,* 68 Ark. 376.

The serious and real question in the case is whether the districts are void as having been established by a council which had no legal existence.  The facts are that a special act of the Legislature approved February 20, 1911 (Special and Private Acts 1911, page 52), undertook to raise the incorporated town of Gravette to the grade of a city of the second class and to confer the powers inhering in a city of that grade.  Pursuant to this act, the town council on March 7, 1911, passed Ordinance No. 62 for the purpose of making effective the act of the Legislature.  This ordinance divided the town into wards and provided for an election at which aldermen should be elected from the respective wards.  This election was held and the aldermen then elected proceeded to discharge the duties of aldermen, and in this capacity enacted the ordinances out of which this litigation arises. On February 22, 1915, in the case of *Cotton* v. *City of Benton,* 117 Ark. 190, we held unconstitutional a special act of the Legislature declaring the town of Benton a city of the second class, as violative of article 12, section 2, Constitution 1874, which provides that ''the General Assembly shall provide by general laws for the organization of cities (which may be classified) and incorporated towns, and restrict their power of taxation, assessment, borrowing money, and contracting debts so as to prevent the abuse of such power.''   The Legislature was in session at the time this decision was handed down, and immediately passed an act entitled ''An act to legalize the governments of municipalities which have been erroneously declared by the Legislature to be cities of the second class.''   This act undertook to legalize the acts of the *de facto* governments of such municipalities and to constitute the *de facto* governments the *de jure* governments until such time as an election could be held for the election of the officers provided for by law for incorporated towns.

It is now earnestly insisted by counsel for appellant that the act of 1915 cured any defects in the organization of the improvement districts and that the case of

*Cotten* v. *Hughes*, 125 Ark. 126, so holds. But we there expressly pretermitted any discussion of the validating effect of that statute on acts which had been performed prior to its passage. That case is distinguishable from the instant case in this, that the improvement district, the organization of which was there upheld, was created by the council of the town of Benton after the passage of the act of 1915 and while the council was acting under the authority there conferred by that act as the council of the town of Benton pending the election of their successors, which had not then been held; while here the improvement districts were established by aldermen who were assuming to act as aldermen of a city of the second class and prior to the passage of the act.

Interesting briefs are filed on the effect of this curative act; but we have chosen not to decide that question, as we uphold the organization of the districts upon another ground. And that ground is that the districts were organized by *de facto* officers, and are valid as such.

The town of Gravette did not cease to be an entity, and its right to exercise its governmental functions did not cease to exist. Because of an unconstitutional act the functions of government were for a time exercised by officers who assumed to act as for a city of the second class which was in fact only an incorporated town. The aldermen who had been in office prior to the passage of the act of 1911 raising the grade of the town to a city of the second class had ceased to act as aldermen of the town, and no officers were undertaking to discharge the function of aldermen except those who had been elected pursuant to ordinance No. 62, referred to above. But while these aldermen were acting as for a city of the second class they did not undertake, so far as this litigation is concerned, to exercise functions which inhered in a city of the second class but not in incorporated towns. We would have a very different question if there had been no legislative authority to create improvement districts in incorporated towns. But that authority existed and improvement districts could legally have been organized

by the council of an incorporated town, and the procedure for organizing the districts would not have been different had these aldermen been acting for a town rather than for a city of the second class. The districts in question are therefore valid if the officers who enacted the ordinances are to be regarded as *de facto* officers of the town. It is intolerable that there could be a period during which a governmental entity should be without a government. Yet at the time of the passage of the ordinances in question the *de jure* town of Gravette would have been without even *de facto* officers unless the aldermen who enacted the ordinances are held to have been the *de facto* officers of the town. No other officers were undertaking to act at that time, and there would have been no legal governmental authority if these aldermen were not *de facto* officers. Both the light plant and the waterworks were installed pursuant to ordinances which no one had questioned, at a cost of many thousands of dollars, which were raised by the sale of bonds, which were issued and sold on the faith of the credit of the districts, and for a period of about four years the government of the town was administered upon the theory that these aldermen were *de jure* officers. A proper regard for the orderly administration of government constrains us to hold that the acting aldermen were *de facto* officers, and the ordinances are, therefore, valid. *Inland Construction Co.* v. *Rector*, 133 Ark. 277; *Faucette* v. *Gerlach*, 132 Ark. 58; *McClendon* v. *State ex rel.*, 129 Ark. 286; *Eureka Fire Hose Co.* v. *Furry*, 126 Ark. 231; *State* v. *Carroll*, 38 Conn. 449.

The decree of the court below will, therefore, be reversed and the causes will be remanded with directions to foreclose the lien against such property as remains delinquent.