Sammy TUMBS *v.* STATE of Arkansas

CR 86-124                                            718 S.W.2d 105

Supreme Court of Arkansas
Opinion delivered October 27, 1986

*Michael Everett*, for appellant.

*Steve Clark*, Att'y Gen., by: *Robert A. Ginnaven, III*, Asst. Att'y Gen., for appellee.

ROBERT H. DUDLEY, Justice. Appellant was found guilty of violating the Omnibus DWI Act of 1983, and his sentence was enhanced because of three prior convictions. On appeal he contends the judgment should be reversed because: (1) There was no substantial evidence to prove that he was driving, and (2) two of his prior convictions were entered by the Municipal Court of Tyronza, a court which was defectively created. The case was certified to this Court by the Court of Appeals under Rule 29(1)(c). We affirm the conviction.

Appellant admits that he was intoxicated and was in one of two cars involved in an accident, but contends there was no substantial evidence to prove that he was driving. The argument is without merit. An eyewitness, Gary Norcross, testified that immediately after the accident, the appellant was in the driver's seat under the steering wheel, and his wife was on the passenger's side of the front seat leaning against the door. Appellant's wife first told the investigating officer that she was driving, but then changed her statement and said she was not driving. She added that the appellant asked her to take the blame for him. The appellant took the witness stand and, in an inherently improbable account, testified that his wife was driving and he was the passenger immediately before the collision, but the impact was so great that it threw him across the seat to the driver's side and, at the same time, knocked his wife across the seat into the passenger's side. He had little to say about the arm rest between the seats.

The jury must be convinced of the accused's guilt

beyond a reasonable doubt, but we, not having the advantage of seeing and hearing the witnesses, are bound to uphold the verdict if it is supported by substantial evidence. *Cassell v. State*, 273 Ark. 59, 616 S.W.2d 485 (1981). Here, there was evidence that immediately after the impact, appellant was in the driver's seat behind the steering wheel. That evidence alone constitutes substantial evidence to support the finding that appellant was driving seconds before the time of impact. Circumstantial evidence alone may be sufficient to support a conviction.

Appellant's second point of appeal is more substantial. In the punishment phase of the bifurcated trial, the trial court allowed into evidence two prior judgments of conviction from the Municipal Court of Tyronza. The Tyronza court, as well as the Marked Tree Municipal Court, was created pursuant to Act 616 of 1975. After appellant's two convictions in the Tyronza Court, but before the case at bar was tried, we declared that Act 616 of 1975 was unconstitutional because it was a special and local act in violation of the Fourteenth Amendment to the Constitution. *Littleton v. Blanton*, 281 Ark. 395, 665 S.W.2d 239 (1984).

Appellant contends that the judgments of the Tyronza Court are void judgments which can be collaterally and retroactively attacked, and that the trial court erred in admitting them into evidence.

The early leading case on the subject was *Norton v. Shelby County*, 118 U.S. 425 (1886). In that case the Supreme Court of the United States held that the members of a county board of commissioners were not de facto officers so as to give validity to county bonds issued by them before the statute purporting to create the board was declared unconstitutional. The Court utterly repudiated the contention that an unconstitutional legislative act may create an office which will make its incumbent a de facto officer. The Court wrote: "An unconstitutional act . . . is, in legal contemplation, as inoperative as though it had never been passed." *Id.* at 442.

In 1903 this Court, without citing *Norton*, adopted that same strict view in the case of *Caldwell v. Barrett*, 71 Ark. 310, 74 S.W. 748 (1903). There, the regularly elected circuit judge was holding court in Bradley County and was unable to attend an adjourned term of court in Chicot County, so the attorneys

present in Chicot County elected a special judge. In ruling that a special judge could not sit in a district while the regular judge was also acting, we wrote:

> In order to be a de facto judge there must be a regularly constituted office and a vacancy therein before one appointed or elected to fill such office can be denominated a de facto officer. . . . When there is an office, and no de jure officer to exercise its functions, then one appointed under the form of law would be a de facto officer at least, and his acts are not to be called in question collaterally. The question is quite different where there is no de jure office, . . . for the foundation of the proceeding must be . . . a lawfully created court, or there is a total want of jurisdiction in the court itself to hear and determine the case, and this jurisdictional infirmity will annul any proceedings therein on mere suggestion to the proper court. It would be beyond all precedent to term the judge presiding in a court which is not a court at all a de facto judge.

In 1907 New Jersey rejected the *Norton* strict view that an unconstitutional law creating an office is void ab initio. *Lang* v. *Bayonne*, 74 NJL 455, 68 A. 90 (1907). The New Jersey court wrote that the vice of the *Norton* doctrine was:

> [I]t fails to recognize the right of the citizen, which is to accept the law as it is written, and not to be required to determine its validity. The latter is no more the function of the citizen than is the making of the law. . . . To require the citizen to determine for himself, at his peril, to what extent, if at all, the Legislature has overstepped the boundaries defined by the Constitution in passing this mass of statutes, would be to place upon him an intolerable burden, one which it would be absolutely impossible for him to bear—a duty infinitely beyond his ability to perform.

This Court later refused to apply the *Norton* strict view in *Eureka Fire Hose Co.* v. *Furry*, 126 Ark. 231, 190 S.W. 427 (1916), and *Board of Improvement* v. *Carman*, 138 Ark. 339, 211 S.W. 170 (1919). We refused to apply the strict view in *Eureka* under the facts of the particular case and refused to apply it in

*Board of Improvement* because of public policy.

In January 1948, the subject was before us again in two consolidated domestic relations cases. In *Howell* v. *Howell* and *Stevens* v. *Stevens*, 213 Ark. 298, 208 S.W.2d 22 (1948), we returned solidly to the strict view. Those cases held the statute establishing a second office of Chancellor and Probate Judge in Pulaski County was unconstitutional and the void statute allowed collateral attacks upon all judgments entered by the second division chancellor. The dissenting opinions pointed out the devastating effect on hundreds of litigants who thought their land disputes were adjudicated or thought they were validly divorced and, by then, had remarried. Three months later, in April 1948, we reversed *Howell* and *Stevens* by finding that the Chancellor was a de facto officer, but said we still adhered to the view that there could not be a de facto judge unless there was a de jure office.

█   Finally, in the case *Landthrip v. City of Beebe*, 268 Ark. 45, 593 S.W.2d 458 (1980), we squarely faced the public policy arguments so clearly advanced by the New Jersey court in the *Lang* case, *supra*. The salient facts were that the city had attempted to create a police court, but no ordinance creating the court had ever been published as required by statute. Thus, the court was not validly created and was not a de jure office. In declining to allow collateral attacks upon the judgments of the court we created an exception to the strict view and acknowledged the public policy arguments. We wrote:

> There are exceptions to the rule that there can be no de facto officer unless there is a de jure office, where the office may be said to exist under color of law. *State* v. *Bailey*, 106 Minn. 138, 118 N.W. 676, 130 Am. St. Rep. 592, 19 LRA N.S. 775, 16 Ann. Cas. 338 (1908). It has been aptly said that great public mischief might well arise if the rule pertaining to de facto officers were not applied to recognize that there may also be de facto courts. *Burt* v. *Winona & St. P.R. Co.*, 31 Minn. 472, 18 N.W. 285 (1884). When a court is organized under color of law, e.g., when its creation is authorized by law, but the proceedings creating it are irregular or defective, it is a de facto court, and its judgments and proceedings are not open to collat-

eral attack. *State* v. *Bailey*, supra. See also, *People* v. *Hanley*, 106 Misc. 625, 37 N.Y.Cr. 430, 176 N.Y.S. 392 (1919); *Marckel Co.* v. *Zitzow*, 218 Minn. 305, 15 N.W. 2d 777 (1944).

The rule governing validation of acts of a de facto officer is based upon public policy and its origin and history show that it is founded in comparative necessity. *Adams* v. *Lindell*, 5 Mo. App. 197 (1878). The doctrine rests upon the principle of protection of the public and third parties. It was engrafted upon the law as a matter of policy and necessity to protect the interest of the public and individuals involved in the acts of persons performing the duties of an officer without actually being one in law. 63 Am. Jur. 2d 939, Public Officers & Employees, § 493; *Matthews* v. *Bailey*, 198 Ark. 830, 131 S.W.2d 425. See also, *Howell* v. *Howell*, 213 Ark. 298, 208 S.W.2d 22 (McHaney, J., dissenting). The reasons for introduction of the doctrine into the law are sufficient basis for extending it to courts whose creation is authorized by law, but defectively done.

The situation with which we are now faced is somewhat like that treated by the Supreme Court of New Mexico when the constitutionality of the act creating a juvenile court in that state was attacked. See *In re Santillanes*, 47 N.M. 140, 138 P. 2d 503 (1943). That court, facing the possibility of invalidating hundreds of judgments in the juvenile courts by a declaration that there was no juvenile court, and never had been, if the condition that there must be a de jure office before there can be a de facto officer were rigidly adhered to in every case, pointed out that it had previously held that, where uncertainty, chaos and confusion would result if the condition were rigidly adhered to, public policy forbids upholding that condition. We face a similar situation here. No doubt there have been hundreds of judgments rendered by the Police Court of the City of Beebe during the eight years intervening between the appointment of a judge and the judgment now being considered on appeal. Apparently the validity of the organization of that court has not heretofore been questioned. There was statutory authority for the creation of the court. We feel that public policy requires that we

sustain the trial court's holding that there was a de facto court until the date of the circuit court's judgment.

■ Similarly, in the case at bar, the General Assembly clearly had the authority to create a municipal court in Tyronza pursuant to the general statutes governing municipal courts, even though the particular act under which the court was formed, Act 616 of 1975, was defective as a special and local act. The fact that the legislature had the authority to create the court, coupled with the requirements of public policy, require that we hold that a de facto court was organized under color of law, and its judgment proceedings are not open to collateral attack.

■ The appellant next argues that the admission into evidence of the prior convictions from a defectively created court constitutes a taking of liberty without due process of law. Such an argument might have been valid if raised on direct appeal, but this is not a direct appeal. It is a collateral attack, and the convictions at issue are not subject to collateral attack.

Affirmed.

HICKMAN, J., concurs.