Raymond WATSON *v.* STATE of Arkansas

CR 86-107                                        724 S.W.2d 478

Supreme Court of Arkansas
Opinion delivered March 2, 1987
[Supplemental Opinion on Denial of Rehearing April 20, 1987.]

*L. Gray Dellinger* and *Larry Dean Kissee*, for appellant.

*Steve Clark*, Att'y Gen., by: *Robert A. Ginnaven, III*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Raymond Watson has appealed from a judgment entered on his conviction of three felony counts and one misdemeanor count of theft by receiving, and one count of possession of a controlled substance with intent to deliver. The convictions brought fines of $16,000 and sentences totaling nineteen years in the Department of Correction. Watson argues twenty points for reversal grouped in five categories: I) the trial court erred in refusing to suppress evidence obtained under a defective search warrant; II) the trial court erred in denying a motion for a mistrial for witness misconduct; III) the trial court erred in permitting the state to amend the information in that Watson was charged and convicted of multiple offenses out of a single, continuing course of conduct; IV) the trial court erred in permitting testimony of other acts of misconduct and prior convictions of the appellant; and V) the trial court erred in permitting the state to exercise a peremptory challenge against a juror who had already been accepted by the state and the defense. We find no merit in the arguments and therefore we affirm the judgment.

J.R. Robinson, Jr. testified for the state that around February 6, 1985 he went with Bobby Foster to a place near Mammoth Spring where they had hidden stolen property — including two three-wheelers and some welding equipment. Robinson helped Foster load the property and take it to appellant's farm in Fulton County where it was traded for marijuana. A week or so later Foster and Robinson agreed that in return for Robinson's silence, Robinson would receive a pound of marijuana which Foster expected to receive from appellant in exchange for stolen guns. Some disagreement arose and Robinson arranged to meet Foster when Foster would have the marijuana, but then tipped off the police, who arrested Foster with the marijuana.

On February 19 a search warrant was obtained on the basis

of information given by Robinson and Foster to Sheriff Stan Witt. The warrant authorized a search of appellant's farm in Fulton County and the seizure of two three-wheeler motorcycles, a cutting torch, two bottles, a double-barreled shotgun, a bolt action shotgun, a semiautomatic rifle, a rifle with a scope, and an indeterminate amount of marijuana. The warrant was executed and, except for the guns, the articles were found in appellant's barn. Marijuana was found in the barn and in a cattle feeder.

## I

### *The Search Warrant*

Appellant attacks the search warrant on eleven grounds (numbered A through K). He submits that even if no defect taken alone would invalidate the warrant, the accumulation of errors is fatal under *Harris* v. *State*, 264 Ark. 391, 572 S.W.2d 389 (1978). We uphold the warrant.

## A

■ Appellant alleges the February 19, 1985 affidavit of Sheriff Witt failed to recite facts which tended to prove the reliability of the two unnamed informants (Robinson and Foster). *Aguilar* v. *Texas*, 378 U.S. 108 (1964) and *Spinelli* v. *United States*, 393 U.S. 410 (1969). We disagree. The affidavit states that one informant told him on February 16, 1985 he went with another individual on February 6, 1985 to the farm of the appellant with "two three-wheeler motorcycles, a cutting torch and two bottles" exchanged for one and one-half pounds of marijuana. The affidavit further states "within the last two days" the other informant returned to appellant's barn where he was shown in excess of ten pounds of marijuana and where he observed the stolen articles still stored there. We note the informants gave specific details from their own actions and observations, describing the articles, the locations and the times with precision. Coupled with the Sheriff's assertion he considered the informants reliable the affidavit was sufficient.[1] *Wolf* v. *State*,

---

[1] The affidavit could have included as a factor of reliability that Sheriff Witt determined the three-wheelers matched the descriptions of similar vehicles in offense reports of stolen property. A.R.Cr.P. Rule 13.1(b).

10 Ark. App. 379, 664 S.W.2d 882 (1984).

■    In *Illinois* v. *Gates*, 462 U.S. 213 (1983), the two-pronged test of *Aguilar* and *Spinelli* was replaced by a different test — "a practical, common sense decision," based on all the circumstances, including the veracity and basis for knowledge of persons supplying information. It is sufficient if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Under *Gates* it is the duty of the reviewing court simply to insure that the magistrate issuing the warrant had a substantial basis for concluding that probable cause existed. We are satisfied those requirements were met in this case. *Jackson* v. *State*, 291 Ark. 98, 722 S.W.2d 831 (1987); *Toland* v. *State*, 285 Ark. 415, 688 S.W.2d 718 (1985).

■    In *Jackson*, the affidavit said only that "a reliable informant advised affiant that he gave another boy $20 to get him some marijuana and watched him go to Spike Jackson's house. When he came out he gave him a bag of green leafy substance and he returned this bag to me." Here, Sheriff Witt initially received information directly from one of the participants, Robinson, describing the removal of specific articles of stolen property and the transporting of that property to appellant's farm in exchange for marijuana. Robinson's information was independently confirmed in three respects: Foster was intercepted where and when Robinson had said he would be, Foster had the marijuana as Robinson had said, and Robinson's information about the delivery of the stolen property to appellant was corroborated by the other informant, Foster. Foster's information reenforced a conclusion that the stolen articles were still there two days later when Foster returned to appellant's farm to trade the stolen guns for more marijuana. Moreover, the admission by the informants of the possession of stolen property cast them under a cloud, and we have recognized that when an informant gives information which exposes himself to prosecution, there is an increased likelihood of reliability. *Thompson* v. *State*, 280 Ark. 265, 658 S.W.2d 350 (1983). The details and circumstances of these transactions and the corroborating aspect of two informants verifying the same events created a "fair probability that evidence of a crime would be found in the place designated," as indeed it was. *Gates* v. *Illinois, supra.*

B

■ Appellant maintains the warrant in this case was not issued by a judicial officer. He reasons that because the case of *Lawson* v. *City of Mammoth Spring*, 287 Ark. 12, 696 S.W.2d 712 (1985) held the municipal court of Mammoth Spring was created in violation of our constitution, all proceedings and judgments of that court are null and void under *Caldwell* v. *Barrett*, 71 Ark. 310, 74 S.W. 748 (1903). However, we have later held that when a court is created under color of law it exists de facto and its orders are valid against collateral attack. *Tumbs* v. *State*, 290 Ark. 214, 718 S.W.2d 105 (1986); *Landthrift* v. *City of Beebe*, 268 Ark. 45, 593 S.W.2d 458 (1980).

C

■ Appellant submits the warrant was not returned in a timely manner. The warrant was returned on the seventh day, whereas five days are allowed under A.R.Cr.P. Rule 13.2(b)(v). On the fifth day Officer Beech called the magistrate, Judge Barksdale, to discuss returning the warrant. She informed him that Monday would be acceptable. The warrant was executed within the allotted time, and there was a good faith reliance with no resulting prejudice to the appellant. *Leon* v. *United States*, 468 U.S. 897 (1984).

D

■ Appellant's argument that there was no written verification of the report of the execution of the warrant is without merit. Officer Beech testified Judge Barksdale placed him under oath before receiving the information.[2] The requirements of A.R.Cr.P. Rule 13.4(b) were adequately met.

E

■ Appellant contends the warrant is defective because A.R.Cr.P. Rule 13.2(b)(i) provides the warrant shall state the date and place where the application was made and this warrant failed to state precisely where the application occurred. True, but the date and Fulton County, Arkansas, are stated and in the

---

[2] Record, p. 324.

absence of any showing as to why greater exactitude was required, we reject the argument. A.R.Cr.P. Rule 16.2; *Baxter* v. *State*, 262 Ark. 303, 556 S.W.2d 428 (1977).

## F

A.R.Cr.P. Rule 13.4(c) requires the issuing magistrate to "file the warrant, report, and list returned to him with the record of the proceeding on the application for the warrant." Judge Barksdale did not file the material until sometime later, prompting the argument that this infraction invalidates the warrant. No prejudice, nor even any inconvenience so far as we can tell, resulted and we regard the delay as inconsequential. *Boyd* v. *State*, 13 Ark. App. 132, 680 S.W.2d 911 (1984).

## G

Citing A.R.Cr.P. Rule 13.4(d), appellant argues Judge Barksdale's failure to transmit the warrant and accompanying documents to the circuit court, which has jurisdiction over felony cases, renders the warrant defective. Judge Barksdale evidently retained the papers in her office until the suppression hearing. As the state points out, the rule is not mandatory, as it states "he *may* transmit the warrant, etc." As with the other challenges to the search warrant, appellant has shown no reason why this handling of the warrant has put him at any disadvantage. *McFarland* v. *State*, 284 Ark. 533, 684 S.W.2d 233 (1985).

## H

Rule 13.3(d) of the criminal rules states that upon completion of the search a receipt shall be made and given to the person from whom the things are seized. That was not done in this case. Had that omission resulted in some doubt about the identity or whereabouts of the articles seized, the argument would have greater weight. *Harris* v. *State, supra.* But the fact is there is no dispute whatever over the identity or location of the things which were seized and the argument is without substance. A.R.Cr.P. Rule 16.2(e).

## I

Appellant notes that A.R.Cr.P. Rule 13.1(c) requires the issuing officer to make and keep a fair written summary of the

proceedings and testimony taken before her. Appellant contends Judge Barksdale failed to keep the affidavit while the warrant was being executed. Had the affidavit been lost the argument would have greater force, but it seems to have been returned with the warrant and no harm resulted.

### J

Under Point J appellant maintains the facts recited in the affidavit were not supported by the proof. He renews the argument that the affidavit fails to establish the reliability of the confidential informants. But we have examined that contention under Point A, and need not reiterate except to note the affidavit claims no prior contact with either informant, it merely refers to each as "reliable," which, given the circumstances in their entirety, Witt was justified in assuming.

The companion argument is that Sheriff Witt's testimony at trial and at the suppression hearing were inconsistent — at the suppression hearing he said he had had prior contact with both informants, whereas at trial he said he had had prior contact with neither — an obvious conflict. Why Sheriff Witt would jeopardize the case with testimony of doubtful credibility is inexplicable. It may be he mistakenly thought he had to establish previous contact with these informants pursuant to *Aguilar*, but, as we have seen, that is not the test. Be that as it may, it is not the sheriff's testimony at the suppression hearing so much as his testimony at the warrant interview that concerns us, as the issue at the suppression hearing is whether there was probable cause shown to the magistrate for the issuance of the search warrant. *Gates* v. *Illinois, supra*. Hence any misleading testimony before the magistrate in obtaining the search warrant would clearly contaminate any seizures thereunder.

On that score appellant's abstract contains nothing concerning the proceedings before Judge Barksdale, although a transcript is in the record. Sheriff Witt did not testify before Judge Barksdale that he had had prior contact with both informants, he said he had had one recent contact with *one* of them, which led to an arrest. That reference, we take it, is to the initial contact with Robinson which led to the interception and arrest of Foster two days later. We are satisfied the proof before the magistrate was factually accurate and Witt's misstatements at the suppression

hearing did not alter the fact that sufficient grounds were shown for the magistrate's issuance of a warrant.

## K

The final challenge involves the description of the place to be searched. Appellant argues the police were given a free hand to search a 560 acre farm in spite of the requirements of A.R.Cr.P. Rule 13.2(b)(iii) that the place to be searched be described with particularity.

Appellant relies on *United States* v. *Chadwick*, 433 U.S. 1 (1977), but in *Chadwick*, the search involved a footlocker, conducted with neither a search warrant nor an arrest warrant. The case has no relevance to the situation before us. The warrant here included a legal description of the farm and directions for reaching the house. We find no authority that a farm is too broad a description where stolen articles and marijuana are believed to be located. Similar descriptions have been upheld. *United States* v. *Frazier*, 491 F.2d 243 (6th C.A. 1974), *United States* v. *Hassell*, 427 F.2d 348 (6th C.A. 1970). The requirement of particularity is to avoid the risk of the wrong property being searched or seized. *United States* v. *Gill*, 623 F.2d 540 (8th C.A. 1980). Obviously, there was no danger of that in this case.

In reply to appellant's reliance on *Harris* v. *State, supra*, we note that Harris was decided a decade ago, before several recent decisions by this court and the United States Supreme Court easing the more rigid requirements affecting search warrants. Even so, the deficiencies in *Harris* were, we believe, of greater substance than in this case, including execution of the warrant during the nighttime without provision in the warrant for a nighttime search.

Highly technical attacks on search warrants are not favored, lest police officers are discouraged from obtaining them. We think the language of *United States* v. *Ventresca*, 380 U.S. 102 (1964) is pertinent:

> These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional requirements, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the

one involved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

## II

### Witness Misconduct

Appellant cites two instances where the trial court's directive to witnesses and jurors not to discuss the case were breached, resulting in motions for mistrials. The arguments are renewed on appeal. In one, the Fulton County Sheriff, a witness for the state, acknowledged in chambers he had spoken with two jurors at the soft-drink machine during a recess. The brief conversation consisted entirely of comments about deer hunting. A mistrial was not required.

The other incident is of more concern. Mike Pickney, who had accompanied Foster when the guns were exchanged for marijuana, testified in chambers about a conversation with Bobby Foster, who had already testified for the state. He said Foster told him "they was going to ask me a bunch of questions and they was going to give me a hard time." Foster told him to remember "we was going to get the pot for J.R.," that "J.R. was the one who wanted the pot and we got the pot on a front," meaning on credit. Back in front of the jury, defense counsel was permitted to question Pickney about the conversation with Foster and to ask if he had not told someone before trial that he would testify to whatever Foster said, even if he had to lie. Inasmuch as the jury was fully informed about the conversation between the two witnesses, as well as Pickney's self-impeaching admission he would lie if necessary, we see no abuse of the trial court's broad discretion concerning mistrials. His assessment of the impact of these developments on the basic fairness of the trial and whether the curative measures sufficed, is superior to our own. We cannot say the prejudice was so pronounced a mistrial was imperative. *Combs* v. *State*, 270 Ark. 496, 606 S.W.2d 61 (1980).

### III

#### *The Conviction of Multiple Offenses*

The original information included all the articles in one count of theft by receiving. The state later filed an amended information charging four separate offenses. Appellant argues the transactions constituted a single continuing course of conduct and, hence, only one offense. We reject the argument in part because the trial court was not asked to pass on the issue. After the state filed its amended information, appellant filed a motion for a continuance on several grounds, including an allegation the defense had not had time to research whether the counts were felonies or misdemeanors. At a subsequent pretrial conference on the motion the issues now argued on appeal were never discussed. Not having made a specific objection on the point now asserted, the issue is waived. *Sawyer v. State*, 284 Ark. 26, 678 S.W.2d 367 (1984).

### IV

#### *Prior Convictions and Other Acts of Misconduct*

Appellant complains the state was permitted to offer proof of prior convictions and other acts of misconduct on his part. J.R. Robinson was asked by the state on redirect if he and Dick Watson (appellant's father) had been "to the back of Raymond's farm?" He said, "Yes, he took me up there to get some marijuana." The defense objected and asked for a mistrial or for an admonition to the jury to disregard the last statement. The trial judge refused to declare a mistrial but instructed the jury accordingly. Appellant requested either a mistrial or an admonition. The court chose the latter and appellant's request was satisfied. *Gilbert v. State*, 277 Ark. 61, 639 S.W.2d 346 (1982).

Next, appellant urges error occurred in connection with questions put to J.R. Robinson and Bobby Foster which violated a motion in limine by the defense. The questions concerned the guns which Robinson and Foster said were traded to appellant for marijuana. In Foster's testimony he acknowledged the guns were stolen and appellant argues this proof had no relevance to the offenses being tried. He cites *Cabbiness v. State*, 241 Ark. 898, 410 S.W.2d 867 (1967) which held that prejudice is presumed in the absence of an affirmative showing to the

contrary. That is no longer the rule. See *Vasquez* v. *State*, 287 Ark. 468, 701 S.W.2d 357 (1985); *Berna* v. *State*, 282 Ark. 563, 670 S.W.2d 434 (1984). Aside from that, the trial judge had denied the motion in limine because he could not decide on the admissibility of the disputed proof until he heard it. Since there was no objection when the testimony regarding the stolen guns was offered, we need not decide whether the testimony had relevance. *Adams* v. *State*, 276 Ark. 18, 631 S.W.2d 828 (1982).

Appellant also argues that questions by the state focused on his character in violation of A.R.E. Rule 404. He was asked if his father had gone to the penitentiary on a drug charge, and if Gary Cunningham and Donnie Allbright had convictions for marijuana. Appellant had earlier testified on direct that Allbright might have planted the marijuana found on his farm. To what extent these questions had relevance to the issues cannot be determined from the abstract, but the appellant has failed to demonstrate how his own character was put in issue by questions involving Cunningham, Allbright and his father. We find no reversible error here.

Another contention: after eliciting from the appellant an admission that he had been convicted of growing marijuana in August, 1984 the state asked how many marijuana plants were found on his property, what penalty the jury imposed, and whether he knew what "stripping marijuana" meant. Appellant relies on *Floyd* v. *State*, 278 Ark. 342, 645 S.W.2d 690 (1983), where we discussed A.R.E. Rule 609 and the use of evidence of prior convictions to impeach. Obviously, what is admissible in one case may not be admissible in the context of another case. Here, the appellant had testified on direct that he had no idea the articles Foster had brought to him were stolen, that he was keeping them simply to determine their value after which he planned to pay for them; moreover, he denied any knowledge of how a sizeable quantity of marijuana got on his farm. When a person in possession of stolen property denies knowing the property is stolen, proof of previous acts of the same nature is admissible to show knowledge. *Reeves* v. *State*, 263 Ark. 227, 564 S.W.2d 503 (1978); *Walker* v. *State*, 13 Ark. App. 124, 680 S.W.2d 915 (1984). By the same token, questions relating to a conviction for growing marijuana and the quantity involved were permissible under A.R.E. Rule 404(b) to show knowledge,

motive and intent of the appellant.

▆ Lastly, appellant complains of the state's questioning of appellant about a quarter of a pound of marijuana. When appellant denied that he and Tommy Corp sold a quarter of a pound of marijuana to a B.J. Weaver, he was asked if Corp delivered that amount of marijuana to Weaver in his presence. Another denial. Appellant also denied having said that he usually didn't deal in quarter pounds. Appellant now argues that A.R.E. Rule 606(b) precludes proof of specific instances of conduct by extrinsic evidence. However, the rule also provides that on cross-examination such proof may be admissible if, in the discretion of the trial court, it is probative of truthfulness or untruthfulness. The objection to this line of questioning was merely general, there was no specific objection. See A.R.E. Rule 103(a)(1).

## V

### *The Peremptory Challenge*

▆ After several jurors had been accepted by the state and the defense, one juror was excused by the court for cause and another by peremptory challenge from the state. Both excusals were over the objection of the defense. Appellant argues that once accepted, a juror cannot then be excused. We settled this issue in *Nail* v. *State*, 231 Ark. 70, 328 S.W.2d 836 (1959):

> As pointed out in that case [*Green* v. *State*, 233 Ark. 761, 270 S.W.2d 895] we have frequently held that a litigant is not entitled to a particular juror. This being true, there is no valid reason to refuse the request to excuse one who has already been taken, even though a defendant's challenges have been exhausted, *unless it first be shown that the defendant will be prejudiced by the service of the venire-man accepted in lieu of the juror excused.* The record in this case, with reference to this matter, completely quoted above, shows nothing further. Counsel raised no objection to the substituted juror, nor endeavored to show any reason why the replacement could not, or would not, try the case with fairness or impartiality.

Appellant failed to show that he was prejudiced by having to take a juror he would not have accepted otherwise.

For the reasons stated, the judgment is affirmed.

GLAZE, J., not participating.

Supplemental Opinion on Denial of Rehearing
April 20, 1987

727 S.W.2d 383

STEELE HAYS, Justice. In our original opinion we cited the testimony of J.R. Robinson, a witness for the state (Point IV, "Prior Convictions and Other Acts of Misconduct."). After the prosecution had asked Robinson on redirect if there was another occasion when Robinson and Dick Watson, appellant's father, had gone to the back of appellant's farm, Robinson answered, "Yes, he took me there to get some marijuana." This response brought the following (R. p. 583):

By Mr. Delinger (Defense Counsel):

Well, we move for a mistrial, and in the alternative we would ask the court that the jury be admonished to disregard that last statement.

By the Court:

I will deny the mistrial but I will admonish the jury.

By Mr. Delinger:

All right. Thank you, Judge. [The jury was then admonished accordingly].

In our original opinion we said that because the trial court granted one of the two remedies sought—the admonition—there could be no error since the defense had asked for one or the other.

By petition for rehearing the appellant argues that we overlooked a later development in the trial reflecting that the motion was first for a mistrial and, if denied, then for an admonition. After a noon recess the following occurred (R. p. 584):

By Mr. Delinger:

(At the bench) My motion, I phrased it incorrectly, I moved for a mistrial first, and then I said or in the alternative for an admonition to the jury. I didn't mean to withdraw my moving for the mistrial. And then you ruled no, then I moved for an admonishment.

By the Court:

That's right. I took it in that order.

In light of the trial court's comment, we accept appellant's point that his motion for a mistrial was preserved and should be decided on the merits.

We have reviewed J.R. Robinson's testimony in full. Robinson was called by the state and on direct examination he was asked nothing about appellant's father or about being at the back of appellant's farm. On cross-examination defense counsel brought out that Robinson and Dick Watson were friends, that Dick Watson had given Robinson between 15 and 20 pounds of marijuana for helping him cut wood. Robinson was also asked by the defense about other trips to appellant's farm. On redirect, the prosecutor asked if there had been one other time he and Dick Watson had gone to the back of the farm and Robinson gave the answer already quoted, prompting the mistrial motion.

In denying the motion for a mistrial the trial court remarked that the answer was not responsive to the question posed. Whether the question could have been answered simply yes or no, rendering the reference to marijuana as voluntary by the witness, was for the trial judge to decide. Evidently he was satisfied the state had not intentionally elicited an improper response from the witness and given the wide latitude afforded trial courts in acting on mistrial motions we see no abuse of discretion. We do not regard the incident as so manifestly prejudicial as to require a

mistrial. *Mosier* v. *State*, 285 Ark. 67, 684 S.W.2d 810 (1985).

Rehearing denied.