Dinzel Earl NORMAN *v.* STATE of Arkansas

CR 95-361                                            931 S.W.2d 96

Supreme Court of Arkansas
Opinion delivered October 7, 1996

*The Law Offices of Greenhaw & Greenhaw*, by: *John F. Greenhaw*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Gil Dudley*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant, Dinzel Earl Norman, was convicted by a jury of conspiracy to manufacture methamphetamine and conspiracy to manufacture marijuana and was sentenced by the Newton County Circuit Court to a combined term of forty years in the Arkansas Department of Correction. Norman appeals the circuit court's judgment of conviction, and this court has jurisdiction of the appeal pursuant to Ark. Sup. Ct. R. 1-2(a)(2). The sole issue on appeal is whether the trial court erred in denying Norman's motion to suppress physical evidence recovered from his residence pursuant to a search warrant. We find no error and affirm.

In June 1993, Chesley Gordon, a confidential informant, contacted Investigator Lance King, of the Arkansas State Police. Gordon stated that he had made an arrangement with Norman to cook methamphetamine on Norman's property in Newton

County, Arkansas. Subsequently, officers of the Arkansas State Police and the Drug Enforcement Agency directed Gordon to go to Norman's residence and begin the process of cooking the methamphetamine and notify them after the process had begun so that a search warrant could be obtained for Norman's property. On June 25, 1993, Special Agent Steve Lowry of the Drug Enforcement Agency prepared an affidavit for search warrant on Norman's property and presented it to the circuit judge who found that reasonable cause existed and issued a search warrant. After the search warrant had been issued, Gordon notified the officers that Norman would be arriving back at his residence that night. As a result of that information, Special Agent Lowry went back to the same circuit judge and obtained a new search warrant containing a nighttime search provision. The search warrant was executed on Norman's property that night with the assistance of various local law enforcement officers. Officers seized numerous items of contraband including a clandestine methamphetamine lab found in a small camper trailer and sixty-five marijuana plants found growing on Norman's property.

Norman moved to suppress the admission of the methamphetamine lab and marijuana plants. During the suppression hearing, Norman's counsel argued that the trial court could not look beyond the face of the warrant itself to determine whether the officers' search exceeded the scope provided by the warrant. Counsel further asserted that because the warrant only authorized a search of the premises of the residence, evidence of the methamphetamine lab found in the small camper trailer should be excluded. With respect to the marijuana plants, counsel challenged the use of the evidence against him on the grounds that the land on which the plants were growing was not specifically described in the warrant. Alternatively, counsel argued that there was no evidence to show that the property on which they were located belonged to him. On that issue, the trial court ruled that if it was Norman's position that the land did not belong to him, then such search and resulting seizure of the items was not in violation of the Fourth Amendment based on the "open fields" doctrine.

On appeal, Norman argues that the evidence found in the small camper trailer as well as the marijuana plants should have been suppressed by the trial court because the scope of the search exceeded that provided for on the face of the search warrant. In

support of his argument, Norman relies on Rule 13.3(c) of the Arkansas Rules of Criminal Procedure which provides in part that, "[t]he scope of search shall be only such as is authorized by the warrant and is reasonably necessary to discover the persons or things specified therein."

The face of the search warrant identified the place to be searched as:

> the person of Dinzel Norman and premises known and described as
>
> A 20' x 24' Airstream trailer, silver in color, with the axle out from under it. Airstream has the tongue intact. There is a 10' addition facing the tongue on the left, with a window on each end. The residence near Wayton, Arkansas.

Norman submits that the description of the property on the face of the search warrant was specific as to the scope of the search authorized and that, because the warrant did not particularly describe the small camper trailer, the shed, or the grounds of the property as places to be searched, any evidence found in those locations should have been suppressed. The State argues that any failure to list those places on the face of the search warrant was cured by their being described in the accompanying affidavit, which requests a search warrant for "the property, as well as all buildings, trailers, outbuildings and vehicles." In the alternative, the State argues that the areas of the shed and camper trailer were encompassed within the definition of "premises" as used on the face of the search warrant. The State relies on definitions found in legal dictionaries and treatises.

The State is correct in its assertion that the definition of the term "premises" includes both the land of the property and the buildings and structures thereon. Professor LaFave stated in his treatise on the Fourth Amendment:

> A search made under authority of a search warrant may extend to the entire area covered by the warrant's description. For example, if the warrant authorizes search of a ranch, the entire acreage of the specified ranch may be searched. Similarly, if the warrant authorizes a search of "premises" at a certain described geographical location,

buildings standing on that land may be searched. This means that if the place to be searched is identified by street number, the search is not limited to the dwelling house, but may also extend to the garage and other structures deemed to be within the curtilage and the yard within the curtilage.

Wayne R. LaFave, *Search and Seizure* § 4.10(a) (3d ed. 1996) (footnotes omitted).

■ Webster defines "premises" as "a specified piece or tract of land with the structures on it[.]" *Webster's Third New International Dictionary* 1789 (1981). Additionally, the term "premises," as used in search warrants, "includes land, buildings, and appurtenances thereto." *Black's Law Dictionary* 1181 (6th ed. 1990).

■ In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances, and we reverse only if the ruling is clearly against the preponderance of the evidence. *State v. Mosley*, 313 Ark. 616, 856 S.W.2d 623 (1993) (citing *Illinois v. Gates*, 462 U.S. 213 (1983), and *State v. Blevins*, 304 Ark. 388, 802 S.W.2d 465 (1991)). We view the evidence in the light most favorable to the appellee, and we reverse only if the ruling is clearly against the preponderance of the evidence. *Beshears v. State*, 320 Ark. 573, 898 S.W.2d 49 (1995); *Mosley*, 313 Ark. 616, 856 S.W.2d 623.

■ Requirements for the contents of search warrants are found in Rule 13.2(b) of the Arkansas Rules of Criminal Procedure, which provides in part that, "[t]he warrant shall state, or describe with particularity . . . the location and designation of the places to be searched[.]" Rule 16.2(e) provides in part that, "[a] motion to suppress evidence shall be granted only if the court finds that the violation upon which it is based was substantial, or if otherwise required by the Constitution of the United States or of this state."

■ This court has previously held that highly technical attacks on search warrants are not favored, as such attacks would only serve to discourage police officers from obtaining them. *Watson v. State*, 291 Ark. 358, 724 S.W.2d 478 (1987). In *Heard v. State*, 272 Ark. 140, 612 S.W.2d 312 (1981), this court concluded that, "[s]uch documents are normally drafted by nonlawyers in the haste of a criminal investigation and are to be tested in a commonsense and realistic fashion, not with a grudging or negative attitude." *Id.* at

143, 612 S.W.2d at 315 (citing *Baxter* v. *State*, 262 Ark. 303, 556 S.W.2d 428 (1977)).

In support of our holding in *Watson*, we quoted the United States Supreme Court's language in *United States* v. *Ventresca*, 380 U.S. 102, 108 (1965):

> These decisions reflect the recognition that the Fourth Amendment's commands, like all constitutional require- ments, are practical and not abstract. If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, such as the one in- volved here, must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

*Id.* at 367-68, 724 S.W.2d at 483.

This court has previously had occasion to pass upon cases similar to this one. In *Baxter*, 262 Ark. 303, 556 S.W.2d 428, this court upheld the validity of a search in spite of Baxter's argument that the property to be searched was not described with particular- ity on the face of the warrant. The search warrant described the place to be searched as "the house occupied by Faron Baxter." This court concluded that even though the language in the search war- rant was vague, the affidavit attached to the warrant described the location with particularity, and thus, the search of Baxter's home was proper.

In *Beshears*, 320 Ark. 573, 898 S.W.2d 49, a case more factually similar to the one at hand, the appellant argued that be- cause the search warrant obtained by the officers was limited to a search of his residence, the search of his business property was unlawful. The warrant itself only authorized officers to search Beshears's residence, although the affidavit used to obtain the war- rant included " 'all offices, shop buildings, grain bins, control rooms" and "other equipment on property known as the Beshears's property.' " *Id.* at 579, 898 S.W.2d at 52. Beshears argued that

because these areas were omitted from the face of the search warrant, the search exceeded the authority granted by the warrant. This court affirmed the trial court's ruling, concluding that:

> We point out that the requirement of particularity of describing the location and place to be searched is to avoid the risk of the wrong property being searched or seized. *Watson v. State*, 291 Ark. 358, 724 S.W.2d 478 (1987). This court stated that the test for determining the adequacy of the description of the place to be searched under a warrant is whether it enables the executing officer to locate and identify the premises with reasonable effort and whether there is any likelihood that another place might be mistakenly searched. *Costner v. State*, 318 Ark. 806, 887 S.W.2d 533 (1994). The risk of misidentification is minimized when the same law enforcement officer who applies for the warrant executes it. *Id.* And in determining whether a particular description is sufficient under this test, courts must use common sense and not subject the description to hypercritical review. *Watson*, 291 Ark. 358, 724 S.W.2d 478.

*Id.* at 579-80, 898 S.W.2d at 52.

In the case at hand, Special Agent Lowry testified that he prepared both the affidavit and the search warrant and that he, along with other law enforcement officers, served the warrant and conducted the search of Norman's property. Lowry stated that the reason he did not include the language of "all buildings, trailers, outbuildings and vehicles," found in the affidavit, in the body of the search warrant was that he believed the affidavit was incorporated into the warrant. Lowry stated that the affidavit was submitted to the issuing judge along with the search warrant for the judge's consideration. Additionally, Lowry stated that although he prepared both the search warrant and the accompanying affidavit, he merely dictated the search warrant and an unknown employee of the Arkansas State Police typed it from the dictation.

We conclude that Lowry's explanation of the discrepancy between the search warrant and the affidavit was reasonable and that the search did not exceed that authorized by the circuit judge who based his issuance of the warrant on the affidavit submitted by the agent. We are also persuaded by the fact that the face of the warrant did include the "premises" of Norman's property, and that a com-

mon interpretation of that term combined with the language found in the affidavit was sufficient to authorize the search of the outbuildings and the land itself. We affirm the judgment of conviction.