Joel Keith TABOR *v.* STATE of Arkansas

CR 97-467                                    971 S.W.2d 227

Supreme Court of Arkansas
Opinion delivered June 4, 1998

*Brenda Horn Austin*, for appellant.

*Winston Bryant*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. Appellant Joel Keith Tabor entered conditional guilty pleas to the offenses of delivery of cocaine, conspiracy to deliver cocaine, and conspiracy to deliver marijuana. He was sentenced by the Boone County Circuit Court to twelve years' imprisonment, with imposition of six years suspended, for the two cocaine charges and six years' imprisonment for the marijuana charge. Pursuant to A.R.Cr.P. Rule 24.3, Appellant reserved the right to appeal the trial court's denial of his motion to suppress the statements given by him to police officers. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(7), as this is a second appeal following an appeal decided in this court. *See Tabor v. State*, 326 Ark. 51, 930 S.W.2d 319 (1996). For reversal, Appellant argues that the trial court erred in denying his motion to suppress, as he contends he had been granted immunity in exchange for his statements. We find no error and affirm.

Appellant was arrested for the foregoing charges on April 14, 1994, and subsequently filed a motion to suppress statements given by him to police during October and November of 1991 and January of 1994. During the interviews, Appellant admitted to participating in drug transactions involving the sale of cocaine and marijuana. Appellant later claimed that he was entitled to immunity and that the statements could not be used against him. A

suppression hearing was conducted on February 13, 1995, after which the trial court denied the motion. The trial court ruled that Appellant had not been granted immunity or promised anything in exchange for his incriminating statements to police officers.

On May 12, 1995, Appellant pleaded guilty to the charges and appealed the suppression ruling to the Arkansas Court of Appeals. The State moved to dismiss the appeal because Appellant had failed to reserve his right to appeal from his guilty pleas as required by Rule 24.3. The court of appeals accordingly dismissed the appeal on January 17, 1996. Appellant then filed a petition to reinstate the appeal on the grounds that the parties had entered into a stipulation to supplement the record to reflect Appellant's intention to enter his guilty pleas on the condition that he would be allowed to appeal the ruling on the suppression motion. The court of appeals, in a divided decision, remanded the case to settle the record. *See Tabor v. State*, 52 Ark. App. 251, 918 S.W.2d 189 (1996). This court granted the State's petition to review that decision, and subsequently dismissed the appeal for want of jurisdiction for Appellant's failure to comply with the express terms of Rule 24.3(b). *Tabor*, 326 Ark. 51, 930 S.W.2d 319.

Following this court's dismissal of the appeal, Appellant successfully petitioned the trial court to withdraw his guilty pleas pursuant to A.R.Cr.P. Rule 26.1. He then entered conditional guilty pleas to the same charges on January 10, 1997, this time reserving in writing his right to appeal the trial court's ruling on his motion to suppress in compliance with Rule 24.3. A judgment and commitment order was filed of record on February 12, 1997, and a timely notice of appeal was filed on February 18, 1997.

For reversal, Appellant argues that the trial court erred in denying his motion to suppress the statements he gave to police. He contends that the statements should have been suppressed because he had been previously granted immunity in exchange for his agreement to assist police officers in making narcotics arrests. He contends further that because he was granted immunity from

prosecution by the United States Attorney for the Western District of Oklahoma, he was entitled to equitable immunity in Arkansas. Correspondingly, he argues that the trial court erred in finding that he voluntarily gave the statements after having been advised of his *Miranda* rights.

■ We do not address the voluntariness argument as a separate point because Appellant failed to raise this issue below, either in his motion to suppress or at the suppression hearing. ·This court has repeatedly held that it will not address arguments, even constitutional arguments, raised for the first time on appeal. *McGhee v. State*, 330 Ark. 38, 954 S.W.2d 206 (1997); *Travis v. State*, 328 Ark. 442, 944 S.W.2d 96 (1997); *Dulaney v. State*, 327 Ark. 30, 937 S.W.2d 162 (1997). Thus, the sole issue before us is whether the trial court erred in finding that Appellant was not acting under a grant of immunity when he made the incriminating statements.

■ In reviewing a trial judge's ruling on a motion to suppress, we make an independent determination based upon the totality of the circumstances, viewing the evidence in a light most favorable to the State, and we reverse only if the ruling is clearly against the preponderance of the evidence. *Norman v. State*, 326 Ark. 210, 931 S.W.2d 96 (1996). The credibility of witnesses who testify at a suppression hearing about the circumstances surrounding the appellant's in-custody confession is for the trial judge to determine, and we defer to the superior position of the trial judge in matters of credibility. *Davis v. State*, 318 Ark. 212, 885 S.W.2d 292 (1994); *Mitchell v. State*, 306 Ark. 464, 816 S.W.2d 566 (1991). Conflicts in testimony are for the trial judge to resolve, and the judge is not required to believe the testimony of any witness, especially that of the accused since he or she is the person most interested in the outcome of the proceedings. *Ross v. State*, 300 Ark. 369, 779 S.W.2d 161 (1989).

The record reflects that Sergeant Sam Martin, of the Harrison Police Department, and Special Agent Lonnie Cox, of the Federal Bureau of Investigation, interviewed Appellant on three

occasions, October 8, 1991[1], October 11, 1991, and November 8, 1991. Trooper David Lafferty, of the Arkansas State Police, and Chief Deputy Jim Carr, of the Marion County Sheriff's Office, subsequently interviewed Appellant on January 13, 1994. The record reflects further that prior to being questioned in three of the four interviews, on October 8, 1991, November 8, 1991, and January 13, 1994, Appellant was advised of his *Miranda* rights from a statement-of-rights form, which he signed, acknowledging that he understood his rights. The transcripts of those three taped interviews were admitted into evidence along with the rights forms. A fourth interview, which occurred on October 11, 1991, was not tape recorded and the record does not indicate whether Appellant waived his rights by signing a rights form on that occasion.

During the suppression hearing, the State did not dispute that Appellant had received a letter of immunity from the United States Attorney for the Western District of Oklahoma. The letter, dated April 1, 1991, reflects:

> The United States Attorney's Office, Oklahoma City, Western District of Oklahoma, is investigating numerous federal violation[s], including narcotics activities of persons known to you and who are currently being investigated by the Federal Bureau of Investigation.
>
> It is our understanding that you are knowledgeable regarding these activities, and are willing to cooperate fully with the federal government in this matter.
>
> Accordingly, the agreement is that in return for your total cooperation, your truthful testimony, consensual monitoring, and your full help in developing evidence against these persons or their associates and others who are similarly involved in these activities, the United States Attorney's Office of the Western District of Oklahoma will not prosecute you for any federal offense related to the aforementioned illegal activities. Any violation of this agreement could result in the presentation of charges to the

---

[1] There is a discrepancy in the record regarding the date of the first interview. Testimony from Sam Martin indicates that the interview occurred on October 8, 1991, while the transcript of the statement reflects that the interview took place on October 9, 1991.

Grand Jury for your participation and involvement in these activities.

The letter further reflects that the offer of immunity in exchange for cooperation was accepted and agreed to on April 17, 1991, and was signed by Appellant.

It is Appellant's contention that the federal immunity agreement was arranged by Agent Cox and that, pursuant to that agreement, Cox required him to cooperate with Sergeant Martin. He argues that because of this connection between Agent Cox and Sergeant Martin, he was entitled to assume that the immunity from federal prosecution in Oklahoma also applied to the statements he made in Arkansas. He asserts that his reliance on the federal immunity agreement was justified by the warnings and admonitions given by the officers, urging him to "come clean" and tell them everything he knew about local drug deals. He asserts further that it is evident from the text of the interviews that he was being required to give his full cooperation to the local authorities. As such, he claims that he is entitled to immunity for equitable reasons.

The granting of immunity is not a constitutional right, but merely one authorized by statute. *Williams v. State*, 329 Ark. 8, 946 S.W.2d 678 (1997) (citing *Fears v. State*, 262 Ark. 355, 556 S.W.2d 659 (1977)). The reason to grant immunity is to aid in the prosecution of criminals by inducing witnesses to testify against them. *Id.* It is within the prosecutor's discretion to grant immunity when it is in the public's interest to do so. *Id.* In the absence of a statutory provision for the grant of immunity, it is within the exclusive discretion of the prosecuting attorney to determine whether a person will be granted immunity in exchange for his or her testimony. *Hammers v. State*, 261 Ark. 585, 550 S.W.2d 432 (1977). Where immunity is granted pursuant to statute, the claimant must show that his or her right to immunity falls within the parameters of the statute. *Id.* Despite the fact that a claimant may not be entitled to statutory immunity, he or she may still have a claim for relief on equitable principles. *Id.* The burden of proving the existence of an immunity agreement and compliance with it rests with the claimant. *Young v. State*, 316 Ark. 225, 871 S.W.2d 373 (1994).

There are two statutory provisions in Arkansas specifically authorizing grants of immunity. Arkansas Code Annotated § 16-43-605 (Repl. 1994) provides for the grant of immunity in general:

> No prosecuting attorney shall grant immunity until he has applied for and obtained in each case a written order from the judge of the circuit court approving the grant of immunity. No such immunity shall be granted by a prosecuting attorney until after the individual has declined to answer questions or has requested immunity before answering questions.

Likewise, Ark. Code Ann. § 5-64-706 (Repl. 1997) provides for immunity in exchange for the giving of evidence concerning violations of the Uniform Controlled Substances Act:

> (a) The prosecuting attorney of any judicial district in this state or any grand jury properly convened according to law, with the approval of the circuit judge, shall have the authority to grant immunity from criminal prosecution with respect to matters revealed by the testimony of anyone giving evidence concerning a violation of the Uniform Controlled Substances Act, subchapters 1-6 of this chapter. However, immunity shall not extend to perjury committed in the testimony.
>
> (b) No prosecuting attorney shall grant immunity until he has applied for and obtained in each case a written order from the judge of the circuit court approving the grant of immunity.
>
> (c) No such immunity shall be granted by a prosecuting attorney until after the individual has declined to answer questions, or has requested immunity before answering questions.

It is evident from the record in this case that Appellant does not qualify for immunity under either of the two foregoing statutes. There was never any agreement to grant Appellant immunity made by the prosecuting attorney in Boone County. Moreover, even had there been such an agreement, it would not have been enforceable under either statute without the written approval of the circuit court. Accordingly, we must view Appellant's claim as one of equitable immunity only.

On the subject of equitable immunity, this court has written:

[D]etermination of a claimant's equitable entitlement to immunity, when opposed by the prosecuting attorney, should lie within the sound judicial discretion of the trial court, which should see that the public faith pledged by the public prosecutor, in the furtherance of justice, is kept by giving due regard to promises and inducements made and held out by him, when the claimant has fulfilled his agreement in good faith. It is appropriate to consider the extent of the claimant's performance of the bargain. In doing so, it should be remembered that the primary purpose of the exchange is to facilitate the prosecution of crime, not to grant immunity.

*Hammers*, 261 Ark. at 599, 550 S.W.2d at 439 (citations omitted) (footnote omitted). In *Hammers*, upon which Appellant relies, there was no dispute by the prosecutor that an agreement of immunity had existed at one time. There, the prosecutor had attempted to revoke the grant of immunity, contending that the appellant had not fulfilled her part of the agreement. Here, however, Appellant has not even established that there ever was an immunity agreement between himself and the Boone County prosecutor. Our review of the evidence leads us to the conclusion that the trial court did not abuse its discretion in refusing to recognize Appellant's claim of immunity based upon equitable principles.

Sergeant Martin testified that at the time he had decided to interview Appellant about the local Harrison drug trade, he was aware of prior contact between Appellant and Agent Cox. Martin stated that he first became aware of Appellant when his name came up during Martin's investigation of Danny Forrest and Larry Howard. Martin stated that he was not sure how he discovered the relationship between Cox and Appellant, but that he had talked with Cox about interviewing Appellant. Martin stated that Cox then told him that he would attempt to get Appellant to agree to talk to Martin, but that there were restrictions on what Martin could discuss with Appellant. Martin stated that Cox told him that Appellant was involved in some cases in Oklahoma, but that Martin could not get into any of that during the interview. Martin stated that there was never any discussion about the exact nature of the relationship between Cox and Appellant with respect to Appellant providing Cox with information. Martin stated that

the only thing he understood about the relationship between Cox and Appellant was that it was an area that he could not discuss with Appellant.

During the course of the October 8, 1991 interview, Appellant admitted to participating in drug transactions involving the sale and distribution of cocaine, occurring within the previous ten days, in which Appellant stated that he had sold cocaine for Howard. During the October 11, 1991 interview, Appellant described an attempted transaction in May or June of 1991, involving himself, Howard, Forrest, and Flynt Ray, to sell a large quantity of marijuana. Appellant indicated that he had received $1,000 for attempting to set up that deal. Martin testified that Appellant's participation in those drug sales was not sanctioned by him or the FBI. Martin stated that although Agent Cox was present during the interviews, Cox did not indicate in any way that Appellant's participation in those drug transactions was done on behalf of the federal government. Martin stated that neither he nor Cox threatened Appellant or promised him any leniency in exchange for his full cooperation. Martin indicated, however, that he told Appellant that if he would cooperate with him in the investigation of Forrest, Howard, and Ray, Martin would inform the prosecuting attorney about such cooperation and would see if something could be worked out to help Appellant, ostensibly on any local charges that he might face. Martin explained that during the interviews, he was attempting to recruit Appellant to assist the officer in making drug buys, but that Appellant did not cooperate with him after the interviews and was never signed up as a cooperating individual. Martin stated that there was no agreement between him and Appellant that would have authorized Appellant to buy or sell drugs on behalf of the government, and that Appellant did not, at any time during the interviews, indicate that he believed that he was acting on behalf of Martin or any other governmental agency.

Trooper Lafferty testified about interviewing Appellant on January 13, 1994. Lafferty stated that the interview took place at the Marion County Sheriff's Office in Chief Deputy Carr's office. Lafferty stated that he and Carr had decided to interview Appellant in preparation of an upcoming trial for Flynt Ray. Specifi-

cally, Lafferty stated that they wanted to ask Appellant about Ray's access to a certain telephone in a duplex owned by Appellant. Lafferty stated that they were not interviewing Appellant for the purpose of getting him to make incriminating statements. Lafferty indicated, however, that they elected to advise Appellant of his *Miranda* rights because Lafferty had an active investigation file on Appellant. Lafferty explained that his investigation file on Appellant was separate and distinct from the case against Ray, for which they were interviewing Appellant. Lafferty stated that Appellant understood his rights, and that he agreed to speak to the officers without an attorney.

Near the beginning of the interview, Chief Deputy Carr informed Appellant that he was not a suspect in any investigation in Marion County, and that he wanted to limit the interview to Appellant's knowledge of Ray, the "target of the investigation." Lafferty testified that Carr then began to question Appellant about Ray having threatened him over some money owed for a drug deal. Lafferty stated that, in response, Appellant claimed that he was cooperating with the FBI and the Harrison Police Department, and that Appellant then proceeded to discuss the same attempted marijuana transaction involving Howard, Forrest, and Ray, which he had earlier divulged to Sergeant Martin and Agent Cox. Lafferty stated that there was no discussion of any agreement in exchange for Appellant's statement that day, and that neither he nor Carr promised Appellant anything in exchange for his statement. As to Appellant's claim that he was working for the FBI and the Harrison Police Department, Lafferty stated that he was not aware that Appellant was working for those agencies. Lafferty stated, however, that he had previously been informed that Appellant had assisted the FBI in a narcotics investigation in Oklahoma. Appellant's previous assistance in Oklahoma was of no apparent concern to Lafferty, as he explained that he was not working on anything involving Oklahoma.

Appellant testified that he had received a letter of immunity from both the federal authorities in Oklahoma and the local authorities in Arkansas. When asked on cross-examination about proof of the alleged letter of immunity in Arkansas, Appellant conveniently stated that the letter had been in his car, and that

since the State had impounded the vehicle, he did not have the ability to retrieve the letter. Appellant did, however, acknowledge that his attorney had access to the car and could have retrieved such letter. Appellant also stated that the $1,000 that he had received in May or June of 1991 was really for rent that Ray had owed him, not for participating in a drug deal, as he had previously told Sergeant Martin and Agent Cox.

Notably missing from the hearing was the testimony of Agent Cox. The record reflects that the suppression hearing was adjourned to a later date in order to obtain Agent Cox's testimony. That testimony was apparently never obtained prior to the time the trial court ruled on the motion. Despite the lack of live testimony from the agent, Cox's statements made during the course of the October 8, 1991 interview are most telling on the issue of Appellant's claim of equitable immunity. Cox stated in no uncertain terms that Appellant had not been cooperating with him as previously arranged, and that Appellant had been "free-lancing" by purchasing and then selling cocaine in situations other than controlled drug buys. Cox stated: "We had an agreement, me and you. But you broke that agreement and you really haven't come clean with me[.]" Presumably, the agreement that Cox referred to as broken by Appellant was the federal immunity agreement. The transcript of that interview is, however, completely devoid of any discussion of an offer of immunity in exchange for working with the officers in Arkansas.

In denying the motion to suppress, the trial court found that the only immunity from prosecution granted to Appellant was on a federal level in Oklahoma for events prior to April 1, 1991. The trial court found further that Appellant's claim that he had participated in the Arkansas interviews under a reasonable belief that he would continue to be granted immunity was without merit. The trial court found incredible Appellant's claim that he was involved in illegal drug activity only to assist law enforcement. The trial court found further:

> The subsequent interviews by Mr. Martin in October and November 1991 and by Officer Carr in January 1994 at no time mentioned a grant of immunity. Mr. Tabor was advised of his rights under *Miranda* and voluntarily talked to the officers. He

never inquired about immunity. Mr. Tabor was no novice to the criminal justice system. He was certainly aware of his right to counsel. *There was never any discussion of Tabor's not being prosecuted. Indeed the sole reason for his agreeing to assist the officer in making a buy from Forrest was to get Tabor out from under any criminal filing against him.* [Emphasis added.]

▪ Based on the foregoing testimony and the unequivocal statements made during the first interview by Agent Cox, along with the fact that Appellant was, at a minimum, advised of his *Miranda* rights prior to the three taped interviews, it is difficult to understand how Appellant could have reasonably believed that he had been granted immunity in exchange for his cooperation. Moreover, even if Appellant had believed that he had been given immunity, the testimony by Sergeant Martin that Appellant never upheld his end of the bargain is sufficient evidence to support the trial court's ruling. We cannot say that the trial court abused its discretion in ruling that Appellant was not entitled to immunity, equitable or otherwise, from the use of his incriminating statements against him.

▪ Furthermore, Appellant's claim that he only gave the incriminating statements because he had been warned by Agent Cox and Sergeant Martin to "come clean" and tell the truth has no merit. Appellant concedes to this court that he gave the incriminating statements *before* the officers had admonished him to "come clean" with his information, and *before* either officer had discussed the possibility of Appellant assisting them in making controlled drug buys in Arkansas. Accordingly, we conclude that the trial court's denial of Appellant's motion to suppress the statements was not clearly erroneous or clearly against the preponderance of the evidence.

Affirmed.