Perry Burton HOLMES *v.* STATE of Arkansas

CA CR 00-1214                                54 S.W.3d 121

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered September 12, 2001

*Frank E. Shaw*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Perry Burton Holmes appeals the trial court's denial of his motion to suppress certain items that were seized from his home. For reversal, appellant

argues that under the Fourth Amendment he has a right to be free from unreasonable search and seizure, and the trial court's conclusion that the officer's warrantless entry was reasonable is clearly against the preponderance of the evidence. We reverse and remand.

While responding to a call that David Ellis had a gun and was possibly violating a no-contact order, Officer Keith Srite found Ellis's vehicle parked at appellant's residence and stopped to investigate. At that time, appellant and then Ellis exited the house, and Srite conducted a pat-down of Ellis. At least two additional officers had arrived at the scene, and Srite ordered these officers to take Ellis and appellant to separate police vehicles to talk. At this time, Srite noticed that a woman, Rosa Beth Allen, was inside appellant's house, and she had come to the door. Srite told Allen that he needed to talk to her. According to Srite, she, without comment, opened the door, and he entered. After entering, he noticed the smell of marijuana and asked Allen "where's the marijuana." At that time, according to Srite, Allen pulled out a tray that contained marijuana and related materials. Srite then asked Allen whether she lived in the house, and she replied that she did not and that appellant lived there and it was his marijuana. Thereupon, Srite exited the house, found appellant, advised him of his Miranda rights, and sought a consent from appellant to search the house, which appellant gave. With the written consent secured, the officers reentered the house and seized butts of smoked marijuana cigarettes (*i.e.*, roaches), marijuana seeds, "bongs," and a "small amount of suspected" methamphetamine.

Appellant's suppression motion sought to exclude the seized items from evidence. Following the hearing, the trial court denied the motion, reasoning that in light of the fact that Ellis was reported to have had a weapon, the officers were justified in entering the house in order to ensure their safety. Appellant then entered a conditional guilty plea commensurate with Ark. R. Crim. P. 24.3(b), and was sentenced to sixty months' probation for possession of methamphetamine, drug paraphernalia, and marijuana. From the denial of the suppression motion, comes this appeal.

■ Our standard of review is well-settled: "If, following an independent determination based on the totality of the circumstances, we conclude that a denial of a suppression motion was clearly against the preponderance of the evidence, then we will reverse." *Mathis v. State*, 73 Ark. App. 90, 94, 40 S.W.3d 816, 818 (2001) (citing *Welch v. State*, 330 Ark. 158, 164, 955 S.W.2d 181, 183 (1997)). In our view, the trial court's finding that the search

and seizure at issue was reasonable is clearly against the preponderance of the evidence. Thus, we reverse and remand.

The issues, as argued by the respective parties, touch on several rules of criminal procedure and concern the government's warrantless entry into appellant's home. Specifically, the parties' arguments center on Ark. R. Crim. P. 3.1, 3.4, first-party consent, and third-party consent. Finally, the State offers the alternative theory of "logical progression of events," commensurate with *Adams v. State*, 26 Ark. App. 15, 758 S.W.2d 709 (1988), to justify an affirmance of the trial court's denial of appellant's suppression motion. We address each issue respectively.

### I. Ark. R. Crim. P. 3.1, 3.4

Rule 3.1 of the Arkansas Rules of Criminal Procedure provides:

> A law enforcement officer lawfully present in any place may, in the performance of his duties, stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit (1) a felony, or (2) a misdemeanor involving danger of forcible injury to persons or of appropriation of or damage to property, if such action is reasonably necessary either to obtain or verify the identification of the person or to determine the lawfulness of his conduct.

Furthermore, Rule 3.4 provides:

> If a law enforcement officer who has detained a person under Rule 3.1 reasonably suspects that the person is armed and presently dangerous to the officer or others, the officer or someone designated by him may search the outer clothing of such person and the immediate surroundings for, and seize, any weapon or other dangerous thing which may be used against the officer or others. In no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others.

The trial court's denial of the suppression motion was based, at least in part, on the theory that the entry into appellant's home was justified to ensure the officer's safety, which might have been compromised by the possibility that Ellis possessed a weapon. However, we conclude that while the law does provide for a limited search in order to protect the officers, Srite's actions went beyond that which was reasonably necessary to ensure his safety.

██ Assuming that the officer believed that Ellis possessed a gun and the focus of concern was for the officer's safety, Ellis was outside of the house when the officer came into contact with him and in the custody of another officer. As such, accepting as fact, *arguendo*, that Rule 3.1 was triggered, the officers could only search, under Rule 3.4, "the outer clothing of [Ellis] and the immediate surroundings." Inasmuch as it is uncontroverted that Ellis was completely out of appellant's house, to affirm based on these Rules would be contrary to the mandate in Rule 3.4 that "[i]n no event shall this search be more extensive than is reasonably necessary to ensure the safety of the officer or others." Accordingly, we conclude that the trial court's decision was clearly against the preponderance of the evidence.

## II. Unreasonable search and seizure

For his next point on appeal, appellant contends that the government's actions constituted a violation of his rights under the Bill of Rights. Specifically, he argues that such actions violated the Fourth Amendment, which provides that "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." *See also* Ark. Const. art. 2, § 15. Appellee, however, argues that the government's actions did not violate the Fourth Amendment in light of appellant's first-party consent or, alternatively, Allen's third-party consent.

The question presented is whether the government's actions constituted a search within the context of the Fourth Amendment and Ark. Const. art. 2, § 15. If not, then appellant cannot claim that his right to be free from unreasonable search and seizure was infringed. *Cf. Maryland v. Macon*, 472 U.S. 463, 468—469 (1985) ("Absent some action taken by government agents that can properly be classified as a 'search' or 'seizure,' the Fourth Amendment rules designed to safeguard First Amendment freedoms do not apply."). According to Srite's testimony, the principal reason for his first entry into appellant's house was to speak with Allen regarding Ellis. In other words, Srite entered a home without a warrant for an investigative purpose, not for the purpose of searching the premises.

Rule 10.1(a) of the Arkansas Rules of Criminal Procedure defines a "search" as follows:

> [A]ny intrusion other than an arrest, by an officer under color of authority, upon an individual's person, property, or privacy, for

the purpose of seizing individuals or things or obtaining information by inspection or surveillance, if such intrusion, in the absence of legal authority or sufficient consent, would be a civil wrong, criminal offense, or violation of the individual's rights under the Constitution of the United States or this state.

The adopted commentary to this rule explains that:

> The definition of "search" is of critical importance since it determines the substantive scope of [this article]. There is no Arkansas statutory precedent for a definition of search, and judicial attempts to develop a definition have been piecemeal since the issue whether particular action did or did not constitute a "search" seldom arises. *The key word in the definition is "intrusion," a term sufficiently broad to encompass any legally cognizable interference with an individual's right to privacy.* The remainder of the definition limits the scope of this initial term. . . .

> Most searches are challenged as intrusions upon an individual's person or property. However, in *Katz v. United States*, 389 U.S. 347 (1967), the Supreme Court repudiated a Fourth Amendment analysis based on "constitutionally protected areas." Consequently, *the definition of "search" is extended to cover any intrusions upon the privacy of an individual.*

(Emphasis added.)

 ██ Along these lines, the United States Supreme Court has defined this critical term as follows: "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). In resolving the question of whether such an expectation was infringed, we rely on *Payton v. New York*, 445 U.S. 573, 589—590 (1980), which stated:

> "[At] the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 [(1961)]. In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

■ Here, the officer's purpose was to obtain information from Allen regarding Ellis, and in doing so, the officer intruded into appellant's home,[1] a place that society has long considered to be a location in which it was reasonable for a person to have an expectation of privacy. Thus, we hold that under Rule 10.1(a), the officer's actions constituted a search within the meaning of the Fourth Amendment and Ark. Const. art. 2, § 15. Accordingly, we now consider whether the warrantless search was unreasonable.

■■ As we recently stated in *Goodman v. State*, 74 Ark. App. 1, 9, 45 S.W.3d 399, 403—404 (2001):

> The right to be free from unreasonable searches and seizures is guaranteed by both the Bill of Rights, U.S. Const., amend. 4, and the Arkansas Constitution, Ark. Const. art. 2, § 15. This right is personal in nature, *Rakas v. Illinois*, 439 U.S. 128, 133 (1978), and "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment. . . ." *Katz v. United States*, 389 U.S. 347, 357 (1967). Specifically, "searches and seizures inside a home without a warrant are presumptively unreasonable [and] . . . [i]n terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 586, 590 (1980). These principles are "subject only to a few specifically established and well-delineated exceptions." *Katz*, 389 U.S. at 357.

The United States Supreme Court neatly summarized the relevant law: "With few exceptions, the question [of] whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, _____ U.S. _____, 121 S. Ct. 2038, 2042 (2001) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *Payton*, 445 U.S. at 586).

Commensurate with its burden to demonstrate that the *per se* unreasonable search was reasonable, the State contends that exigent

---

[1] It might be tempting to argue that the officer's actions did not constitute a search because appellant was not originally the subject of the officer's investigation. After all, the evidence does not appear to demonstrate that the officer purposefully attempted to deprive appellant of his guaranteed rights. However, our rules of criminal procedure do not define a search so narrowly. More importantly, to adopt such a rationale would circumvent the Fourth Amendment guarantee that one is secure in one's homes, and such a decision would be contrary to the instructions in *Boyd v. United States*, 116 U.S. 616, 635 (1886), that "illegitimate and unconstitutional practices get their first footing . . . by silent approaches and slight deviations from legal modes of procedure. . . . It is the duty of the courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachment thereon."

circumstances did exist to justify affirming the trial court's decision. Namely, appellee argues that the warrantless entry was reasonable in light of appellant's first-party consent or, alternatively, in light of Allen's third-party consent. We address each subissue separately and hold that under the Fourth Amendment and Ark. Const. art. 2, § 15, the search was unreasonable.

### 1. First-party consent

■ ■ While we agree with appellee that entries based on voluntary first-party consent can be considered reasonable, *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973), we disagree with the notion that appellant's consent is determinative in this case. Although appellant put forward testimony at the suppression hearing that the written consent was involuntary, we disregard that inasmuch as to conclude otherwise would be contrary to our general principle that we defer to the trial judge on issues of credibility. *See Tabor v. State*, 333 Ark. 429, 433, 971 S.W.2d 227, 230 (1998). More importantly, however, it is the initial entry, which took place before the written consent was obtained, that is of greater concern to us. In this regard, it is plain that the officer entered a private home without a warrant and, for the aforementioned reason, appellant's consent was not an exigent circumstance upon which the State can sustain its argument that the entry complied with the law. Accordingly, we hold that a finding that the State met its burden of demonstrating exigent circumstances to justify a warrantless entry of appellant's private home under the theory of first-party consent would be clearly against the preponderance of the evidence.

### 2. Third-party consent

As an alternative theory, appellee argues that Allen provided a valid third-party consent to justify the warrantless entry. Again, we agree that voluntary third-party consent can be considered reasonable, *United States v. Matlock*, 415 U.S. 164 (1974); however, we disagree with the State's position that such consent was given in this case.

It is questionable as to whether Srite's observations at the time he received Allen's "consent" were sufficient to sustain a conclusion that he reasonably believed that the consenting party had common authority over the premises that was searched. Assuming, *arguendo*, that the officer reasonably believed Allen had authority to permit the consent, we do not reach the question of apparent authority

until we are satisfied that Allen's actions constituted consent. *See* Ark. R. Crim. P. 11.1 ("An officer may conduct searches . . . without a search warrant or other color of authority if consent is given to the search. . . .").

■ When viewing the totality of the circumstances, it is arguable that Allen's conduct should not be construed as consent. Here, the dispute centers on whether Allen's non-verbal conduct constituted third-party consent to the government to enter appellant's home. While we do not necessarily hold that consent must be oral or written to be effective, we are concerned about the general notion of courts speculating as to the meaning of a third-person's nonverbal conduct to reach the conclusion that a warrantless search was reasonable. After all, as stated in *Bumper v. North Carolina*, 391 U.S. 543, 548—549 (1968):

> When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given. This burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.

*See also White v. State*, 261 Ark. 23-D, 24, 545 S.W.2d 641, 642 (1977). In our view, it is self-evident that from the officer's perspective there is little, if any, objective difference between acquiescence to a claim of lawful authority and implied third-party consent. This realization, coupled with the fact that we must view searches in cases such as this as *per se* unreasonable, form the basis of our concern. This problem is remedied, of course, if the third-party consent is oral or, even better, written.

■ Our supreme court touched on the issue of implied consent in *Norris v. State*, 338 Ark. 397, 409, 993 S.W.2d 918, 925—926 (1999), and quoted with favor *United States v. Gonzalez*, 71 F.3d 819, 830 (11th Cir. 1996) (citations omitted), which stated:

> We have previously noted our hesitancy to find implied consent (*i.e.*, consent by silence) in the Fourth Amendment context and we agree with our colleagues in the Ninth Circuit that, whatever relevance the implied consent doctrine may have in other contexts, it is inappropriate to "sanction[ ] entry into the home based upon inferred consent." As Judge Ferguson cogently explained:
>
> > The government may not show consent to enter from the defendant's failure to object to the entry. To do so would be

> to justify entry by consent and consent by entry. "This will not do." We must not shift the burden from the government — to show "unequivocal and specific" consent — to the defendant, who would have to prove unequivocal and specific objection to a police entry, or be found to have given implied consent.

The facts of the case at bar provide a good illustration of potential problems with nonverbal third-party consent. Srite acknowledged that he might have drawn his weapon before entering appellant's home and was certain that he had instructed two additional officers to take appellant and Ellis away for interrogation. Following these events, he and Allen were alone — he was on the porch and she was inside the house. Srite's testimony plainly demonstrates that he did not solicit Allen's consent to enter appellant's home, and he acknowledged Allen did not give him oral permission to enter the house. Instead, he merely told Allen that he needed to talk with her and asked if there was a place that they could talk. Thus, what Allen intended is unclear — was she inviting the officer inside appellant's home or was she reacting to the command of a law-enforcement officer who may have drawn his weapon and was accompanied by at least two other officers who had already taken away the person who resided in the house?

██ When viewing the totality of the circumstances, we conclude that a finding that Allen's actions constituted a communication to the government to enter appellant's home that was both "unequivocal and specific" and given "freely and voluntarily" is clearly against the preponderance of the evidence. Moreover, in light of the foregoing, we also conclude that it is unnecessary and, accordingly, decline to address the issue of whether the government's warrantless entry into appellant's home was lawful under the theory that Allen had either actual or apparent authority to consent to the entry to appellant's home. Instead, we merely conclude that the trial court's denial of the suppression motion constituted reversible error for the foregoing reasons and, therefore, reverse.

### III. Logical progression of events

██ In its final argument, appellee argues that the officer's actions constituted a "logical progression of events" that warrant an affirmance of the denial of the suppression motion. In support of this argument, the State relies upon *Adams*, which relied, in part, on the United States Supreme Court decision of *New York v. Belton*, 453 U.S. 454, 460 (1981), in which the Court held that "when a

policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." However, both *Belton* and *Adams* concern Fourth Amendment and the search and seizure of items following the stopping and detaining of individuals who are in vehicles. We decline to accept the State's ostensible invitation to adopt Fourth Amendment analysis of the searches of vehicles to the searches of a home in light of the well-developed precedents that specifically touch on these rights as they pertain to a person's home.

However, it is instructive to note that in *Adams*, the court also relied upon *Baxter v. State*, 274 Ark. 539, 542, 626 S.W.2d 935, 936—937 (1982), which also dealt with the stopping and detaining of an individual in a vehicle and stated:

> The crucial issue in this case is whether the initial stop of appellant was valid under state and federal law. If the stop is found to be valid, the logical progression of events which followed resulted in probable cause for the arrest. The subsequent search of appellant's car after the arrest was a search incident to a lawful arrest and valid under the recent case of *New York v. Belton*, 453 U.S. 454 (1981).

Accordingly, if we were to adopt the State's invitation to apply the foregoing authorities to the homes, our conclusion would be the same. The crucial issue in this case is whether the initial entry of appellant's home was valid under state and federal law. If the entry is found to be valid, the logical progression of events which followed could have resulted in a valid warrantless search of the house. However, for the reasons already stated, we conclude that the initial entry was unlawful and the search was unreasonable.

In reaching our decision, we do not intend to undermine the general manner in which our law-enforcement officers interact with their fellow citizens. However, we are cognizant that these officers occupy a special role in our society inasmuch as their actions frequently represent the government's first contact with individuals. Because our laws rightly value the rights of these individuals, even the most casual of contacts by police officers — particularly when such contact involves the entering of a person's home during the course of exercising official duties — can raise profound constitutional questions. In our view, the officer here simply operated beyond established parameters, which necessitates a reversal. "[T]o conclude otherwise would exact too high a cost inasmuch as such a decision would be contrary to the principles embodied in the Fourth and Fourteenth Amendments to the

United States Constitution." *Mathis*, 73 Ark. App. at 96, 40 S.W.3d at 820.

Reversed and remanded.

NEAL, BAKER, and ROAF, JJ., agree.

BIRD and VAUGHT, JJ., dissent.

LARRY D. VAUGHT, Judge, dissenting. "Reasonableness" is the linchpin of Fourth Amendment analysis. The prohibition against unreasonable searches and seizures protects citizens from police misconduct and overreaching; however, it does not require that police be infallible and free from all mistakes. As stated by the Supreme Court of the United States:

> It is apparent that in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government — whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement — is not that they always be correct, but that they always be reasonable.

*Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990).

In the instant case, Deputy Srite testified that after Mr. Ellis and the appellant were outside of the house, there was a woman (Ms. Allen) standing in the doorway to the house. Deputy Srite approached Ms. Allen and asked her if there was some place they could talk.[1] He stated that she opened the door and "indicated to me to come in." Before launching into a Fourth Amendment analysis, the deputy's options should be considered. If Ms. Allen had simply come out of the house to talk outside, there is no question that he could not have entered the house. If, on the other hand, Ms. Allen had retreated into the house and told the deputy that he could not enter, again he would be barred from lawful entry. However, her gesture of invitation (without considering at this time

---

[1] Deputy Srite's request to interview Allen was permissible under Rule 2.2(a) of the Arkansas Rules of Criminal Procedure, which provides that "[a] law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of a crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any reasonable request."

whether she had the authority to invite) must be considered clear and reasonable.

The first question to be answered is whether Deputy Srite, by simply entering the house at Ms. Allen's invitation, was "searching." Although the dictionary definition of "search" requires an intent to probe on the part of the searcher, the Supreme Court of the United States has recognized a "search" for Fourth Amendment purposes as an intrusion by the State of an area in which an individual has manifested a subjective expectation of privacy, and society is willing to recognize that expectation as reasonable. *See Kyllo v. United States*, ___ U.S. ___, 121 S.Ct. 94 (2001); *California v. Ciraolo*, 476 U.S. 207 (1986). The very core of the Fourth Amendment is "the right of a man to retreat into his own home and there be free from governmental intrusion." *Silverman v. United States*, 365 U.S. 505, 511 (1961). With few exceptions, a warrantless search of a home is presumptively unreasonable. *See Illinois v. Rodriguez*, 497 U.S. 177 (1990); *Payton v. New York*, 445 U.S. 573 (1980). Therefore, Deputy Srite's mere act of crossing the threshold of appellant's home does indeed constitute a warrantless search. However, the constitutional prohibition against warrantless searches is not applicable if voluntary consent has been obtained, either from the individual whose property is searched, *see Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), or from a third party who possesses common authority over the premises, *see United States v. Matlock*, 415 U.S. 171 (1974). In this case, the person who admitted the officer, Ms. Allen, was later determined to be a visitor who had no common authority over the premises. The questions now become whether Ms. Allen voluntarily consented to the search and whether the officer could reasonably rely on the consent.

Failure to object to a search does not constitute consent. *United States v. Gonzalez*, 71 F.3d 819 (11th Cir. 1996). In this case, there was not merely a failure to object — the officer never asked to come in. His inquiry was only for a place to talk.[2] The person offering the house as the location for the "talk" was Ms. Allen. Her gesture was clear to the officer, whose testimony was believed by the trial judge. On matters of credibility we defer to the trial court. *Tabor v. State*, 333 Ark. 429, 971 S.W.2d 227 (1998).

---

[2] The majority makes much ado about testimony that the officer "may" have had his gun drawn when he approached the house. However, a careful review of the abstract indicates that Deputy Srite testified that he may have drawn his gun during his *initial* approach to the scene, prior to the arrest of Ellis and appellant. There is no testimony that he had his gun drawn at any time during this subsequent approach to the home for the express purpose of interviewing Ms. Allen.

In assessing the voluntariness of Ms. Allen's consent we again look to the reasonableness standard. The facts in this case are almost identical to those in *United States v. Turbyfill*, 525 F.2d 57 (8th Cir. 1975). In that case, the officers went to appellant's home in the course of a counterfeiting investigation and knocked on the door. A friend of the appellant's named Church answered the door, and after the officers identified themselves, Church backed away from the door and they entered. The officers' entry was not preceded by either verbal or written consent. After entry, the officers observed marijuana in plain view, leading to the eventual charges against the appellant. The Eighth Circuit upheld the initial entry and stated:

> An invitation or consent to enter a house may be implied as well as expressed. There was no error in the determination of the district court that the action of Church in the opening of the door and stepping back constituted an implied invitation to enter.

525 F.2d at 59 (citations omitted).

The majority, in the instant case, holds that the trial court's finding that Ms. Allen consented to the entry of the officer is clearly against the preponderance of the evidence. They rely on *Norris v. State*, 338 Ark. 397, 933 S.W.2d 918 (1999) (quoting *United States v. Gonzalez, supra*), for the proposition that implied or inferred consent is not valid under the Fourth Amendment. However, *Norris* supports affirmance of this case in all respects.

In *Norris*, the officer went to the appellant's home on the tip of a citizen that the appellant was driving erratically. The door was answered by the appellant's mother-in-law (Ms. Wise) who testified that she admitted the officer into the house because the dogs were making a disturbance and for no other reason. Once inside, she went down the hall to get the appellant, and the officer followed her without asking permission and without invitation. The supreme court first examined whether the mother-in-law, who did not live in the home, had the authority to consent to the entry. The court, citing *Grant v. State*, 267 Ark. 50, 589 S.W.2d 11 (1979), held that so long as a searching police officer reasonably believes that a person giving consent has authority to do so, the consent is valid, notwithstanding a later determination that the consentor had no such authority. The court then reversed the case based on the officer's act of following Ms. Wise down the hall to the back of the house. The court upheld the initial entry and discussed the issue of implied consent only with relation to the uninvited entry to the back of the house.

The analysis again returns to reasonableness. What an individual is assured by the Fourth Amendment itself is *not* that no government search of his house will occur unless he consents, but that no such search will occur that is "unreasonable." *Illinois v. Rodriguez*, 497 U.S. 177 (1990). The invitation Ms. Allen offered for entry into the house was clear in the mind of Deputy Srite. He testified that he thought that she lived there with the appellant and that she had authority to let him enter. Although that conclusion was erroneous, it was not unreasonable. "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Id.* at 186 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). The United States Supreme Court has upheld as reasonable the entry into an appellant's residence under the invitation of a third party who had no authority to consent, but who the officer reasonably believed did have such authority. This conclusion was stated with the classic definition of reasonableness:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' " that the consenting party had authority over the premises? If not, then warrantless entry without further inquiry is unlawful unless authority actually exists. But if so, the search is valid.

*Id.* at 188. Because here the officer acted reasonably when he entered the appellant's house upon the invitation of Ms. Allen, who he reasonably believed had authority to invite him in, I would uphold the warrantless entry into the appellant's home.

Once inside the house the officer immediately detected the strong odor of marijuana. Having concluded that his entry into the home was lawful, the evidence in the form of the odor was detectable without a warrant pursuant to the "plain smell" doctrine. *United States v. Roby*, 122 F.3d 1120 (8th Cir. 1997). The officer then asked Ms. Allen where the marijuana was, and she produced it. He next inquired if she lived there. After receiving a negative response, the officer immediately exited the house and sought (and received) the written consent of the appellant to complete the search. Unlike the investigator in *Norris*, Deputy Srite did not take advantage of his lawful entry to expand the scope of his search to other parts of the house. He acted "reasonably" by inquiring, at the first detection of

possible contraband, about ownership of the house. I would, therefore, uphold the seizure of the marijuana produced by Ms. Allen after Deputy Srite detected its odor, and the seizure of the items found in the search subsequent to the written consent of the appellant. Accordingly, I would affirm the denial of the motion to suppress.

I am authorized to state that Judge BIRD joins me in this dissent.